[No. 11865. Department Two. November 16, 1914.]

NORTH COAST DRY KILN COMPANY, *Appellant*, v.
MONTECOMA INVESTMENT COMPANY *et al.*,
*Respondents.*[1]

SALES—CONDITIONAL SALES—SUBSEQUENT MORTGAGES—RIGHTS AND LIABILITIES. A creditor of the vendee, in a conditional sales contract, violates no rights of the vendor by taking from the vendee a chattel mortgage of all its property, including the property conditionally sold, and later assigning the mortgage to creditors under an agreement relieving him of liability as guarantor of the vendee's debts; since these acts could not disturb the possession or rights of the vendor under its conditional sales contract.

SAME—CONDITIONAL SALES—RIGHTS OF VENDOR—ACTIONS—PLEADING—FRAUD. In such a case, a complaint by the vendor to recover of the mortgagee the amount due on the conditional sales contract, is not aided by alleging that the mortgage was taken and assigned as the result of a conspiracy to defraud, since they are merely empty accusations to stigmatize acts that appear regular and legitimate, in the absence of allegation of any act on which fraud could justly be founded.

RECEIVERS—SALES—TITLE OF PURCHASER—LIENS AND CLAIMS OF OTHERS. Where title to property of an insolvent is deraigned through an authorized receiver's sale, regular in all things, and purporting to convey an absolute title free of all incumbrances, the title conveyed is an absolute title, making priorities between a chattel mortgagee and the conditional seller immaterial.

SALES—CONDITIONAL SALES—FILING—PLACE OF FILING. A conditional sales contract, filed in the county where the property is situated, but not in the county of the vendee's residence, as required by Rem. & Bal. Code, § 3670, is void as to subsequent creditors in good faith.

RECEIVERS—REPRESENTATIONS OF CREDITORS—SALES—TITLE OF PURCHASER. Where a conditional sales contract to a vendee was void as to subsequent creditors in good faith, a receiver of the vendee upon insolvency representing such creditors, takes the title to which the creditors were entitled; and hence purchasers at the receiver's sale take the title freed of the claims of the conditional vendor.

ELECTION OF REMEDIES—ISSUES SUBMITTED—ESTOPPEL. Where a conditional sales vendor seeks in a receivership case, to have his

[1] Reported in 144 Pac. 58.

claim against the insolvent vendee allowed as a preferred claim or, in the alternative, a return of the property, and the issues are tried out in that form, and it is decided that his conditional sales contract is void as against creditors, and that he is not entitled to a return of the property, there is an election of remedies, which estops him from attempting in another proceeding to follow the property in the hands of a purchaser at the receiver's sale, had after an adjudication that he had no preference rights to the property; and it is immaterial that by stipulation he had restricted the issues to the determination of his preference rights.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered October 29, 1913, in favor of the defendants, in an action on contract, upon sustaining demurrers to the complaint. Affirmed.

*Paul B. Phillips* (*Milo A. Root* and *W. G. McLaren*, of counsel), for appellant.

*Sullivan & Christian* and *Hayden, Langhorne & Metzger*, for respondents.

FULLERTON, J.—This is an appeal from a judgment rendered against the appellant after demurrers had been sustained to its complaint and after it had elected to stand thereon. The ultimate question presented by the appeal therefore is, does the complaint state facts sufficient to constitute a cause of action.

The facts set forth in the complaint are, in substance, the following: On December 5, 1910, the appellant sold to the Syverson Lumber & Shingle Company, a corporation, under a conditional sale contract, and delivered to it at its shingle mill, at Montesano, certain dry kiln fixtures and furnishings at the agreed price of $1,790, of which sum $442.22 was subsequently paid. The conditional sale contract was regular in form, and provided that the title to the whole of the property should remain in the appellant vendor until the full purchase price was paid. The shingle company was organized in Pierce county, Washington, and its head office and legal residence was at Tacoma therein. The respondent G. A. Onn was an

officer of the shingle company, and signed the conditional sale
contract on behalf of the company as such officer.   The ap-
pellant failed to file the conditional sale contract for record
in the auditor's office of Pierce county, the legal place of
residence of the shingle company, but did file it for record
in the auditor's office of Chehalis county.

Prior to January 7, 1911, the respondent Onn had ad-
vanced for the use of the shingle company various sums of
money, aggregating $21,000, and had become its surety for a
loan made to it by the National Bank of Commerce of Tacoma,
in the sum of $13,500.   On the day named, he agreed to ad-
vance to the use of the shingle company such further sums as
it might require up to the sum of $9,000.   To secure this
indebtedness and liability, the shingle company, on the same
day, executed to him a mortgage on all of its property in
Chehalis county, including the property described in the con-
ditional contract of sale.   Of the sums agreed to be advanced,  ·
Onn subsequently advanced $5,500, and later on paid the note
due the National Bank of Commerce.   The shingle company
was then indebted, or subsequently became indebted, in large
sums to general creditors, some of whose claims had been "un-
derwritten or guaranteed" by the respondent Onn.   On April
27, 1912, the shingle company was adjudged insolvent at the
suit of an unsecured creditor, and a receiver was appointed,
who immediately took possession of all its assets and prop-
erty, and, as alleged in the complaint, now has possession of
such property, "and has and does now manage and control
said property and assets of said insolvent company."   At or
about the time of the commencement of the action in which
the receiver was appointed, certain of the general creditors
of the shingle company whose claims had been guaranteed by
Onn organized, and became stockholders in, the respondent
corporation, Montecoma Investment Company.   This com-
pany afterwards took an assignment from Onn of his in-
terests in the mortgage executed to him by the shingle com-
pany and, as a consideration for the assignment, agreed to

and did assume the liability of Onn arising out of his guarantee of the claims of its stockholders.

On June 14, 1912, the appellant filed with the receiver, its verified claim for the unpaid portion of the purchase price of the dry kiln fixtures and furnishings as a preferred or secured claim, asking, as an alternative, in case the claim should not be allowed as a preferred or secured claim, for the return to it of the fixtures and furnishings. The receiver refused to allow the claim as a preferred claim or to return the fixtures, but allowed the claim as a general creditor's claim, and so notified the appellant. The appellant thereupon presented a petition to the court in which the receiver's action was pending praying that the receiver be required to recognize and allow its claim as a preferred claim, or return to it the property, as demanded in its claim presented to the receiver. The receiver, answering the petition, objected to the relief demanded, on the ground that the conditional sale contract had not been recorded as required by statute, and the sale was, in virtue of the statute, absolute as to purchasers and incumbrancers of the property, and subsequent creditors of the shingle company who had become such in good faith, and that there were such incumbrancers and creditors. The court entered upon a hearing of the issues raised by the petition and objections thereto, at which hearing (to quote from the appellant):

"It was agreed in open court that the only matter then to be determined was whether the conditional sale contract was so filed as to be notice to subsequent creditors, having no actual knowledge or notice of the claim and priority of this plaintiff, and it was further agreed that the determination as to which creditors, if any, subsequent to this plaintiff, became such with actual knowledge of the title of this plaintiff in said dry kiln equipment, should be postponed till after the final adjudication of the rights of creditors having no notice of this plaintiff's equity; and that thereafter, on, to wit, the 5th day of August, 1912, the prayer of said petition was denied by said court and judgment was entered dismissing

this plaintiff's petition, from which judgment this plaintiff
appealed to the supreme court of the state of Washington, and
that after due proceedings and hearings the decision of said
supreme court was rendered and the judgment of the trial
court affirmed on the 17th day of March, 1913; but that no
proceedings were ever had to determine the priorities between
this plaintiff and the defendants herein or those claimants, or
their assigns if any, who were charged with notice to this
plaintiff's security and equity."

While these proceedings were pending, the Montecoma In-
vestment Company presented its claim to the receiver for the
amount of its assigned mortgage and accumulated interest,
the whole amounting to upwards of $45,000, asking that it be
allowed as a preferred claim against the shingle company and
its general creditors to the extent of the property covered by
its mortgage. The claim was so allowed by the receiver and
by the court, and afterwards on February 5, 1913, the re-
ceiver, under the direction of the court, offered the mortgaged
property for sale, at which sale the Montecoma Investment
Company bid therefor the full amount of its claim, and the
same was sold to it on such bid. The sale was afterwards ap-
proved by the court, and suitable and proper conveyances
were made to the investment company evidencing the sale.
Subsequently the investment company sold and delivered a
part of the property, which part included the dry kiln fix-
tures, to the Hoquiam Sash & Door Company, for a valuable
consideration.

It is then alleged that the Montecoma Investment Company
has not satisfied the assigned mortgage of record, and still
holds the same, and holds, of the property therein described,
certain real property situated in Chehalis county; and fur-
ther:

"That the claim of this plaintiff is and was superior to the
claim of said G. A. Onn and said Montecoma Investment
Company under said mortgage, and that said G. A. Onn and
his assignee, the Montecoma Investment Company, and each
of them, were and are trustees under said mortgage and under

said conditional sale contract for the benefit of this plaintiff to the extent of the unpaid portion of the purchase price of said dry kiln apparatus, towit, the sum of $1,354.78, with interest thereon at eight per cent per annum from the 12th day of January, 1911, and that they and each of them have fraudulently and unbeknown to this plaintiff, conveyed said property and that they and each of them have fraudulently and unbeknown to this plaintiff, converted to their own use the funds and assets held by them in trust for this plaintiff, and have conveyed and caused to be conveyed to bona fide purchasers the property so held by them as security in trust for this plaintiff, to the damage of the plaintiff in the sum of $1,354.78, with interest thereon from January 12, 1911, at eight per cent per annum."

In appropriate places in the complaint, the acts of the respondents Onn and the Montecoma Investment Company are characterized as fraudulent, being the result of a conspiracy entered into for the purpose of cheating and defrauding the appellant, and the general creditors of the shingle company. It is also alleged that the shingle company, at the time of the execution of the mortgage to Onn, was and at all times since has been insolvent, and has no property other than the mortgaged property, out of which the claims of the creditors can be satisfied. The prayer is in the alternative, first, for a judgment against the respondents for the unpaid portion of the appellant's claim, and second, if the first relief demanded be denied, for a judgment subjecting the property still held by the respondent Montecoma Investment Company to the payment of its claims.

The respondents appeared separately in the court below, and so appear in this court. Their demurrers were substantially similar, and were both special and general; it being alleged therein that there was another action pending for the same cause of action; that the cause of action set forth in the complaint had been adjudicated; and that the complaint did not state facts sufficient to constitute a cause of action. The judgment of the court is general, and does not specify on

which of the grounds stated in the demurrers, whether one
or more, it was thought the judgment could be rested.

Noticing, first, the allegations of the complaint with respect
to the respondent Onn, we are clear that no cause of action
is stated against him. In so far as any actual participation
on his part in the transaction which lies at the foundation of
the appellant's cause of action is charged, his acts were simple
and aboveboard. He was an officer of the Syverson Lumber
& Shingle Company. That company purchased certain fix-
tures from the appellant on a conditional sale contract, and
Onn signed the contract on behalf of the company as such
officer. He had made large advances to the shingle company,
and had become its surety for large sums. He agreed to make
further advances, and in consideration thereof the company
executed a mortgage to him on its property, including that
held under the conditional sale contract to secure the advances
he had agreed to make and a part of the obligations of the
company for which he stood as surety. Subsequently he made
the advances agreed upon, and paid the secured obligation on
which he was bound as surety. Later on, certain creditors of
the shingle company, holding claims on which he was indorser,
organized the respondent corporation, and this corporation
took an assignment of the mortgage, and as a consideration
therefor agreed to relieve him of the shingle company's obliga-
tions to its stockholders which he had indorsed. Here his
connection with the transaction ended. In so far as the com-
plaint shows, he had no part in the subsequent proceedings
by which the title and possession of the property claimed by
the appellant was transferred from the shingle company to
the Hoquiam Sash & Door Company, nor is it alleged that
he had any secret interest or profit in the transaction. On
the contrary, the inference is, although it is not directly so
alleged, that he sacrificed the very considerable advancements
he had made on behalf of the shingle company in considera-
tion that he be relieved from further obligation which he had
guaranteed. In taking the mortgage, Onn violated no rule

of law or morals, nor did he do so when he assigned it. These acts neither disturbed the possession of the property nor affected the appellant's right to enforce its contract. The appellant was in no way obligated by the mortgage, and could recover the property as well after it was given as it could before that time. We can, therefore, see no reason for the conclusion that the acceptance and subsequent transfer of the mortgage rendered the respondent liable to answer for the unpaid portion of the purchase price of the property. It is true, the appellant alleges that the mortgage was taken fraudulently, and in pursuance of a conspiracy entered into between the respondent and the assignees of the mortgage for the purpose of cheating and defrauding the appellant of the property, but no act of the respondent is pleaded on which the charges can justly be founded. Manifestly they are but empty accusations of the appellant, the only use of which is to stigmatize acts the appellant conceives are adverse to its own rights. Such accusations furnish no grounds for an inquiry into transactions which appear otherwise regular and legitimate.

The question of the sufficiency of the complaint as against the respondent Montecoma Investment Company is of more difficulty, but we think the court rightly determined it also. The title acquired by the company to the property here in question is not deraigned through the mortgage of which it is assignee. There was no foreclosure of the mortgage or sale thereunder. Its title is deraigned through the insolvency or receivership proceedings, and it has such title as the receiver was competent to convey to it in virtue of those proceedings. That the proceedings were regular is not questioned, nor is it questioned that the receiver purported to sell an absolute title to the property; that is to say, title free and clear of liens of every kind. If, therefore, the receiver had power to make such a sale, it follows as of course that the purchaser acquired an absolute title.

It is contended, however, that the receiver took no better title to the property than his insolvent, the Syverson Lumber & Shingle Company had therein, and that its title was not absolute, but conditional only, and hence, the receiver could not, by a sale, pass anything more than the conditional title, leaving the property subject to be pursued by the appellant in the hands of the purchaser, as freely as if the purchaser had taken the property from the insolvent directly. The rule of law here invoked is unquestionably sound as a legal proposition (See, *Sumner Iron Works v. Wolten,* 61 Wash. 689, 112 Pac. 1109; *McGill v. Brown,* 72 Wash. 514, 130 Pac. 1142, and *Davis v. Foster,* 29 Wash. 363, 69 Pac. 1102), but we think the rule inapplicable to the appellant's situation. In the cases cited, the court was speaking of absolute outstanding titles—titles so far perfected as to be unassailable by creditors of the insolvent. Here the appellant did not have such a title. It failed to file its conditional sale contract in the proper office, and because of such failure the sale was absolute as to purchasers, incumbrancers, and subsequent creditors in good faith. Rem. & Bal. Code, § 3670 (P. C. 349 § 35). Here there were such creditors, and they were entitled to have the property sold as the property of the insolvent. Since it was so sold at public sale by the receiver, the respondent took such title thereto as the receiver was empowered to give, which we think was title absolute.

Moreover, we think the appellant is now estopped from asserting, as against a purchaser of the property at the receiver's sale, any claim against such property. The appellant presented its claim to the receiver as a preferred claim, asking in the alternative that, if its claim be not thus allowed, it have a return of the property. The receiver refused to recognize the claim as a preferred claim or to return the property, but allowed the claim as a general creditor's claim. The appellant thereupon instituted a proceeding before the court in which the receivership was pending to reverse the action of the receiver. On a trial of the issue presented, the court ad-

judged that the appellant was not a preferred creditor, and was not entitled to a return of the specific property, which judgment this court afterwards affirmed. While it is true the appellant alleges in its present complaint that only a part of the issues were tried in that proceeding—that it was stipulated between itself and the receiver that they would first try out the question whether or not it had complied with the statutes in filing its conditional sale contract; and, if that question should be determined against it, the parties would then try out the question as to which creditors, if any, became such with actual knowledge or notice of the title of the appellant to the property; and that this latter question was not subsequently tried out—we think the fact does not permit it to pursue the property in the hands of a purchaser at the receiver's sale. As we have shown, the property was not sold subject to its claim, nor under any right derived through the mortgage to the respondent Onn, but was sold after an adjudication that the appellant had no preference claim to the property. Since it selected the forum in which it would try the issue, and agreed upon the manner in which it would try it, it was obligated to pursue the remedy to the end. It cannot now be heard to say, in another forum and in another cause of action, as against a purchaser at the receiver's sale, that all of the issues were not there determined.

Our conclusion is that the judgment appealed from is without error and should be affirmed. It is so ordered.

CROW, C. J., MOUNT, PARKER, and MORRIS, JJ., concur.