No. 26,965.

L. L. BURGER, *Appellee*, v. THE FIRST NATIONAL BANK OF ANTHONY, *Appellant*.

(257 Pac. 979.)

SYLLABUS BY THE COURT.

1. PLEADING—*Amendment of Petition—Stating New Cause of Action.* When the petition, in stating a cause of action, sets forth a contract and its violation, an amendment to the petition which sets forth as a basis for the cause of action a new and different contract than that relied on in the original petition should not ordinarily be permitted to be filed, and if filed, it must be treated as though a new action was then filed on the cause of action therein stated.

2. ACCORD AND SATISFACTION—*Acceptance of Proposition Under Protest.* When parties to a transaction differ as to how it should be settled, one of them contending it should be settled on one basis, the other contending it should be settled on another basis, and one proposes the settlement on the basis as he contends for and the proposition is accepted, it is in legal substance a settlement. The fact that the party accepting does so complainingly avails him nothing. The effective way for him to protest such settlement is to decline the offer of settlement.

Accord and Satisfaction, 1 C. J. p. 528 n. 65; 1 R. C. L. 195. Compromise and Settlement, 12 C. J. pp. 319 n. 54, 62, 320 n. 63, 71. Limitation of Actions, 37 C. J. p. 1074 n. 30. Pleading, 31 Cyc. pp. 410 n. 89, 411 n. 95, 415 n. 35; 21 R. C. L. 580, 581.

Appeal from Harper district court; GEORGE L. HAY, judge. Opinion filed July 9, 1927. Reversed.

*Vernon Day, E. C. Wilcox, Myrtle Youngberg* and *J. Howard Wilcox,* all of Anthony, for the appellant.

*Donald Muir* and *Harry B. Davis,* both of Anthony, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to recover the amount of a claimed deposit in a bank. The jury returned a verdict for plaintiff, on which judgment was rendered. Defendant has appealed.

In the petition filed January 2, 1923, it was alleged in substance that, beginning many years ago, plaintiff and defendant, through Sam Smith, its then president, made an oral agreement that plaintiff would from time to time deposit in and loan to defendant various sums of money, to bear interest from the date of such deposit at the rate of eight per cent per annum; that defendant might take and apply the money as deposited as it deemed advisable, representing the amounts so taken by the transfer to plaintiff of good bankable commercial paper as security to plaintiff for the money so loaned to defendant; that as such paper came due, to collect the same and apply the proceeds as the money of plaintiff for defendant's use, or substitute other good bankable commercial paper in lieu thereof. That after the death of Sam Smith one Frank C. Gish became president of defendant bank, and that plaintiff and Gish, by oral agreement, continued the same arrangement. That later Gish "withdrew from the securities held by the said bank for this plaintiff and representing the amount loaned to it, certain bankable paper . . . and in its stead and without the consent of this plaintiff, substituted paper that was poor, difficult to collect upon and in some cases uncollectible." That thereafter and about June 8, 1922, plaintiff approached the officers of defendant (Gish having retired as an officer of the bank) in regard to closing his account and his previous agreement; that defendant was unable to make settlement in money, and delivered to plaintiff the notes it held as security; that at the time it was orally agreed the sum due plaintiff from defendant was $9,096.90; that since receiving the notes plaintiff had collected some of them in full, and others in part, but had been unable to make further collections on the notes, and had tendered them to defendant and demanded payment from defendant of the balance due

thereon, which demand had been refused; that there was a balance due him of $5,509.90, for which sum plaintiff prayed judgment with interest at eight per cent per annum since June 8, 1922.

On December 1, 1923, plaintiff filed an amended petition in which was omitted the allegations above quoted in paragraph 4 of the original petition, and in lieu thereof alleged in substance that later defendant agreed with plaintiff "that said defendant bank would pay plaintiff upon the balance to his credit in said bank the sum of eight per cent per annum, with the privilege of withdrawing any or all of said sums at any time that said plaintiff might desire." It was further alleged that when the notes were taken from the bank on June 8, 1922, they were not delivered to plaintiff nor received by him in satisfaction of his claims against the bank. Other allegations were in substance as in the original petition.

On October 18, 1924, defendant answered the amended petition and denied the oral contract as therein alleged, and alleged that plaintiff was a customer of the bank for many years, and at his request defendant undertook to, and did at various times, loan money for plaintiff, investing the same in various notes which were kept in a package of notes owned by plaintiff in the vault at the bank; that defendant at no time agreed to be responsible for or liable to plaintiff for any investment, or to pay plaintiff any interest thereon; that such investments were made for plaintiff in good faith and according to the best judgment of defendant's officers; that on June 8, 1922, plaintiff removed his package of notes from the bank and accepted all the loans mentioned and described in plaintiff's petition, and closed his account with the bank; that such notes were accepted by the plaintiff as his individual property, and the defendant had collected a large amount thereon. Defendant denied any liability to plaintiff, and further pleaded the three-year statute of limitations. Plaintiff filed a general denial in reply.

On these pleadings the case went to trial, resulting in a judgment for defendant. A new trial was granted—for what reason the record does not disclose—but that is no longer material.

A new trial was had in January, 1926. At this trial, ignoring the business transactions between plaintiff and defendant in previous years, plaintiff offered evidence tending to show that in April, 1921, plaintiff and defendant, through its president, Frank C. Gish, had a parol agreement by which the defendant from that time on was to

pay plaintiff eight per cent per annum on his deposit at the bank, and to permit plaintiff to withdraw any part or the whole of such deposit at any time. It appears that what was meant by the deposit, as the parties used the term, included the amount to plaintiff's credit as a checking account on the books of the bank (then less than $25) and the value of the notes which the bank had kept in the vault in a separate envelope for him, but even the exact amount of these notes at that time is not shown by the evidence. There was evidence also that when plaintiff took the notes from the bank about June 8, 1922, he did so under protest, contending that he should have money for his deposit. There was further evidence that plaintiff had collected some of the notes, but some time after taking them away he went back to the bank and asked the bank to pay him the amount of the notes, which the bank declined to do, and that there was a balance due upon the notes.

At the close of plaintiff's evidence his counsel asked permission of the court to file an amended petition to conform to the evidence, for the reason, as he stated, that the evidence was somewhat at variance with his previous petition. Defendant objected, and among other things charged plaintiff's counsel with an attempt to cut out proof that the business was carried on just as it originally had been under Sam Smith's presidency. Plaintiff's counsel stated "that is exactly what it is for," and specifically denied that the old agreement had anything to do with the agreement claimed here. The trial court held it would not have that effect; that notwithstanding plaintiff's claim of a new contract, on different terms, made in April, 1921, defendant could show what it claimed to be the true relation between the parties in respect to all their dealings. Plaintiff then, on January 14, 1926, filed an amended petition conforming to his evidence as offered, in which it was alleged in substance that in August, 1920, J. F. Burger, a brother of plaintiff, and the defendant, through its president, Frank C. Gish, entered into an oral agreement whereby it was agreed that J. F. Burger would place upon deposit in the bank a sum of money, about $5 000, and that the bank would allow him upon his open account interest thereon at the rate of eight per cent per annum, the bank to use the money as it pleased and repay it to him at any time; that in pursuance of the agreement such a deposit was made, and that thereafter and in April, 1921, plaintiff, in company with his brother, went into defendant's bank

and called upon its president, Frank C. Gish, and advised him that he wanted, and intended to withdraw his deposit from the bank; that Gish stated that he disliked for him to withdraw his account from the bank, and proposed that if he would not withdraw his deposit the bank would handle it in the same manner the bank was handling the deposit of his brother, and would pay him the same rate of interest the bank was then paying his brother, to wit, eight per cent per annum, and that any time plaintiff wished to withdraw his account, or any part thereof, from the bank he could do so; that in pursuance of such agreement he left his deposit in the bank, and that later, about June 8, 1922, he desired to withdraw his account from the bank and was advised by its then president and cashier that defendant had loaned his money and taken notes for the same, which notes they offered to plaintiff and advised him that he could have the notes or nothing; that he took the notes, but at that time advised the bank that he was doing so under protest; that thereafter he returned the notes and demanded that the bank take them; that the bank refused to do so, and he again left the bank with the notes and took the same under protest; that thereafter he collected certain of the notes in full and made certain collections on others; that he had been unable to collect the balance due on the notes, and that there was then due on the notes $6,062, for which sum plaintiff prayed judgment.

Defendant demurred to plaintiff's evidence, which demurrer was overruled. Defendant then offered evidence in support of its answer, and at the close of all the evidence asked for an instructed verdict in its favor, which was denied. Other instructions were requested. Some of them were given in part, others refused.

In this court appellant argues many questions. It will not be necessary to consider each of them in detail. It is contended, among other things, that the court erred in permitting the amended petition to be filed January 14, 1926, for the reason that it set up a new cause of action not relied upon in the previous petition, and for the further reason that any cause of action set out in this amended petition was barred by the statute of limitations. This contention must be sustained.

Under the pleadings as originally framed the issue between the parties was clear. Plaintiff claimed that by an agreement made in 1913 with Sam Smith, acting for defendant, and continued by de-

fendant's officers who succeeded Smith, he loaned to the bank sums which he deposited from time to time and was to receive interest at eight per cent per annum on such sums; that the bank was privileged to charge some of its notes to his account, place such notes in an envelope and safely keep them for him as security for his deposits, while defendant claimed that it made loans for plaintiff at his request, collected the interest or principal thereon and reinvested the money for plaintiff, all under his express authority and direction, that it at no time agreed to pay him interest, and in fact paid him none, and that the notes were owned by plaintiff and were his property. Upon the trial of this issue there was a judgment for defendant. Reading the record before us it does not appear how it could well have been otherwise. The correspondence between the parties and the records of the bank's books show clearly that the arrangement was as contended by defendant. Plaintiff, in his letters to the bank, spoke of the notes as being his, frequently gave specific instructions as to renewal or extension of certain notes, authorized the bank to keep the money invested for him, and neither received nor claimed any interest from the bank other than that paid by the makers of the various notes. The evidence on plaintiff's behalf on this trial, and the amended petition conforming thereto, was a decided departure from the petition previously filed. It is predicated upon a new and later contract, one made in April, 1921, and is based on the claim that by reason of this agreement plaintiff then had a deposit in the bank, being the amount of the value of his notes and checking account, upon which defendant agreed to pay him eight per cent interest and to permit its withdrawal at any time; that he had no interest in the notes as security or otherwise, and that he was enitled to receive at any time on demand the full amount of his deposit with accrued interest thereon in cash, or its equivalent; and that this agreement was unrelated in any way to the previous agreement made by plaintiff and Sam Smith for defendant.

This amended petition, filed at the close of plaintiff's evidence over defendant's objection, stated an entirely different cause of action than that stated in the previous petition, both as to the time when the contract was made and as to the material substance of the contract. The rule applying to amendments to petitions, and the effect of them, is well stated in *Railroad Co. v. Sweet*, 78 Kan. 243, 96 Pac. 657, as follows:

"Amendments which only amplify or make more specific the averments of the original petition, or which state the wrong suffered or right relied on, are ordinarily permissible and will relate back to the beginning of the action; but where the amendment sets forth a new and different cause of action the statute of limitations continues to run until the amendment is filed." (Syl. ¶1.)

And the application of the rule, as there stated, is as follows:

"In an action to recover damages for the negligent setting out of a fire which destroyed the plaintiff's trees the original petition alleged that the fire was negligently set out at a certain time and place, and after the period of limitation had expired the plaintiff obtained leave to amend his petition so as to aver that the damage resulted from another and different fire, which was started five miles distant from the one relied on in the original petition. *Held,* that the amendment set out a distinct and different tort and a new cause of action, upon which a recovery was barred by the statute of limitations." (Syl. ¶ 2.)

In that case previous decisions are discussed. Some of the later cases are *Taylor v. Swift & Co.,* 114 Kan. 431, 219 Pac. 516; *Beneke v. Bankers Mortgage Co.,* 119 Kan. 105, 237 Pac. 932; *Becker v. Porter,* 119 Kan. 626, 240 Pac. 584. It was error to permit the amended petition to be filed, and if filed it must be treated the same as though a new action had been then filed on the cause of action therein stated.

Under the cause of action as alleged in the amended petition when plaintiff went to the bank about June 8, 1922, to draw his deposit he was entitled to payment in cash, or its equivalent. If he had the cause of action he now relies on he had it on that date. According to his testimony defendant denied his right to payment in cash and tendered him notes, and told plaintiff he could take them or nothing. He asked defendant's cashier to collect some of the notes for him, and defendant did collect more than $5,000 on the notes within a week or ten days. Plaintiff then took the remaining notes and the cashier's checks, one for $4,569 and the other for $1,049.78, and closed his business with the bank. He testified that he took the notes under protest, but if he was entitled to money for their value he did not have to take them at all. Defendant contended the notes belonged to plaintiff. He did take them and did exercise all the rights of ownership of them. He sold one of them to Mr. Halbower personally and got full value for it—$1,000. He collected two or more of the notes in full and retained the proceeds. He made collections on the other notes. When he finally took them back to

the bank he asked that the balance due on the notes be paid—he did not ask for the balance of his deposit. Appellant argues that, even though plaintiff protested to defendant the taking of the notes, the fact·that he did take them and exercised all the rights of ownership in them precludes him from now contending that the notes were not his. This point is well taken. Appellee argues that he had to take the notes. Of course he did not have to take them; if his contract was as his petition now alleges and his evidence tended to show, he was entitled to money for the amount of his deposit; when he demanded payment of his deposit in money and such payment was refused he did not have to take something else; he could have sued at once for the amount of his deposit. It was in legal substance a settlement. (1 C. J. 528.) On being offered the notes by defendant as all that was due, plaintiff could either accept or reject the offer. If he accepted, the fact that he did so complainingly avails him nothing. (*Nassoiy v. Tomlinson,* 148 N. Y. 326.) The effective way for him to protest was to decline the offer. (12 C. J. 319.)

Appellant contends that the cause of action set out in plaintiff's amended petition is barred by the statute of limitations. The contention is well taken. The cause of action arose June 8, 1922. The amended petition was filed January 14, 1926. The three-year statute applies. (*Talcott v. National Bank,* 53 Kan. 480, 36 Pac. 1066; *Bock v. First Nat'l Bank,* 123 Kan. 304, 255 Pac. 68.) The question was raised by answer, by demurrer to the evidence (*Arnold & Co. v. Barner,* 100 Kan. 36, 163 Pac. 805; *Mercantile Co. v. Rooney,* 114 Kan. 840, 220 Pac. 1048), and by the motion for a directed verdict.

From what has been said it necessarily follows that the judgment of the court below must be reversed with directions to enter judgment for defendant. It is so ordered.