[No. 25021.  *En Banc*.  May 2, 1935.]

JOHNSON-STEPHENS & SHINKLE SHOE COMPANY, *Plaintiff*, v. MARLATT & MILLER, INC., *Defendant*.

B. T. WOODS, *as Receiver, Appellant*, v. WASHINGTON SHOE COMPANY, *Respondent*.[1]

*Stern & Stern*, for appellant.

*Poe, Falknor, Falknor & Emory*, for respondent.

GERAGHTY, J.—Appellant was receiver of Marlatt & Miller, Inc., a corporation, and had in his possession all of the assets of that corporation, consisting principally of a stock of shoes.  Included in the merchan-

[1]Reported in 44 P. (2d) 818.

dise taken over by the receiver was a quantity of shoes manufactured by the respondent Washington Shoe Co., having an invoice value of approximately nine hundred dollars.

Respondent, claiming title to these shoes under an alleged contract of consignment, demanded possession of them from the receiver, and upon refusal of its demand, filed in the receivership proceedings a petition for their reclamation. Pending a hearing on the reclamation proceedings, the respondent and appellant entered into a stipulation, by the terms of which all the shoes sought to be reclaimed were delivered to the respondent with an agreement that, in the event reclamation was denied, the respondent would return the shoes to the appellant or pay him their invoice price; and should the appellant prevail, the respondent should have the right to file a general claim against the estate of Marlatt & Miller, Inc., for the invoice price of the shoes, fixed at $929.34.

Upon trial of the issue raised by respondent's petition in reclamation and the appellant's answer, the trial court sustained respondent's right to reclamation and gave a money judgment in the sum of $41.30 against the appellant, this being the invoice value of shoes missing from the stock claimed by the respondent. This appeal is from the court's judgment.

The stock of shoes in controversy here was delivered by respondent to Marlatt & Miller, Inc. under the following written agreement:

"This agreement entered into this 8th day of July, 1932, by and between Washington Shoe Company of Seattle, Washington, party of the first part, and J. L. Marlett, Inc. of Aberdeen Washington, party of the second part, to-wit:

"The said party of the first part agree to consign to the party of the second part Shoes as required up to $1,200 (Twelve Hundred dollars) on following terms:

"Payments to be made every Monday by the party of the second part in full for all Shoes sold, at invoice price plus ten per cent (10%) of all Shoes so consigned by the party of the first part.

"The ten per cent (10%) is to go to the credit of party of the second part for the purpose of gradually acquiring an equity in the stock.

"The party of the second part is to pursue the business of selling our Shoes in a vigorous manner and to maintain and operate this Shoe store entirely at his own expense.

"It is also agreed that the party of the second part will carry full coverage of insurance, and such policy is made payable to party of the first part.

"It is further agreed that stock so consigned remains the property of the party of the first part and for which the party of the second part is responsible to the party of the first part for its merchantable condition, quantity, and loss by theft or otherwise, whether or not covered by insurance.

"In the event that the party of the second part should be compelled to discontinue their shoe store at Aberdeen, Washington, the party of the first part agrees to take back any shoes that are not shopworn or discontinued numbers, and the condition of such shoes to be returned is left to the judgment of the party of the first part.

"In the event this business does not show a profitable turnover you agree at the end of six months to return all of this consigned stock not sold by you to us, unless this agreement is further extended, you pay all charges for the return of same.

"This agreement may be terminated upon thirty days notice by either parties."

The construction of this agreement raises the controlling issue in the case. The trial court construed it to be one of consignment. In his brief, appellant thus states his contention:

"It is the position of the receiver that the so-called consignment agreement was, in fact, a contract for the sale of goods, under the terms of which the vendor

reserved title until full payment of the purchase price. Such a sale is conditional and unless filed for record as required by Rem. Rev. Stat., § 3790, the sale became absolute as to subsequent creditors, and as to the receiver as representative of general creditors of the insolvent corporation. It is an uncontested fact that the agreement upon which petitioner relies was not filed as a conditional sale contract.''

We are in accord with appellant's contention that the agreement is not to be construed as one of consignment; for the purpose of this case, we accept appellant's contention that the contract is one of conditional sale, not filed of record within the terms of Rem. Rev. Stat., § 3790.

Accepting appellant's view of the agreement, what are his rights as receiver? Admittedly, as between the vendor and vendee, the contract remained binding, notwithstanding the failure to have it filed of record. Under the cited section, it remained valid except as to *bona fide* purchasers, pledgees, mortgagees, encumbrancers, and subsequent creditors. The appellant is manifestly not a *bona fide* purchaser, pledgee, mortgagee or encumbrancer. He is the receiver of the vendee corporation, but we are unable to find anywhere in the record before us any evidence of subsequent creditors whom he might claim to represent. Indeed, there is nothing in the record indicating that there are any creditors.

It is the prevailing rule that a conditional sale contract, valid as between the original parties, is valid as against the vendee's receiver and may be enforced against him.

''Coming now to the merits, it is well settled in this state that, under a contract such as between the appellant and the Lumber Company, title does not pass, and that such a reservation of title is enforceable

against third parties. *Kidder v. Wittler-Corbin Mach. Co.*, 38 Wash. 179, 80 Pac. 301. Appellant, therefore, had two courses it might pursue: it could assert its title to the machinery as against the receiver and claim the possession thereof; or it could surrender and waive its right so to do, and come in under a general creditors' claim. It chose the former, and having done so, it was the duty of the receiver to report the demand to the court and ask for instructions. It would have been the court's duty to thereupon inquire into the demand, and if it found it well taken, to order the receiver to comply therewith and surrender the machinery or pay the balance due. The receiver could obtain no better or different title or claim to the machinery than the insolvent lumber company. Its rights were his rights; no more, no less. The adjudication of the insolvency of the lumber company and the appointment of a receiver in no wise established any lien upon this machinery. It remained with the receiver, as with the lumber company, subject to the assertion of appellant's title because of the default in the deferred payments." *Sumner Iron Works v. Wolten,* 61 Wash. 689, 112 Pac. 1109.

The rule announced in the foregoing case is clarified, as to the rights of subsequent creditors, in *North Coast Dry Kiln Co. v. Montecoma Inv. Co.*, 82 Wash. 247, 144 Pac. 58, where it is said:

"It is contended, however, that the receiver took no better title to the property than his insolvent, the Syverson Lumber & Shingle Company had therein, and that its title was not absolute, but conditional only, and hence, the receiver could not, by a sale, pass anything more than the conditional title, leaving the property subject to be pursued by the appellant in the hands of the purchaser, as freely as if the purchaser had taken the property from the insolvent directly. The rule of law here invoked is unquestionably sound as a legal proposition (See, *Sumner Iron Works v. Wolten,* 61 Wash. 689, 112 Pac. 1109; *McGill v. Brown,* 72 Wash. 514, 130 Pac. 1142, and *Davis v. Foster,* 29 Wash. 363, 69 Pac. 1102), but we think the rule inap-

plicable to the appellant's situation. In the cases cited, the court was speaking of absolute outstanding titles—titles so far perfected as to be unassailable by creditors of the insolvent. Here the appellant did not have such a title. It failed to file its conditional sale contract in the proper office, and because of such failure the sale was absolute as to purchasers, incumbrancers, and subsequent creditors in good faith. Rem. & Bal. Code, § 3670 (P. C. 349 § 35). Here there were such creditors, and they were entitled to have the property sold as the property of the insolvent."

Express statutory recognition was given by the 1915 session of the legislature to the view expressed in the last cited case, by the inclusion in § 3790 of the proviso, "whether or not such creditors [subsequent creditors] have or claim a lien upon such property."

█ If we were permitted to do so, we might assume that, there being a receiver, there must also be creditors and, possibly, subsequent creditors. But we are not permitted to supplement the statement of facts and transcript before us by such an assumption. Appellant's appeal must be disposed of here upon the record he has brought before us.

█ The trial court having reached a correct result, although upon a wrong premise, the judgment will be affirmed.

MILLARD, C. J., BLAKE, MAIN, MITCHELL, STEINERT, BEALS, and TOLMAN, JJ., concur.

HOLCOMB, J. (concurring)—I concur in the result, but upon the grounds that the contract is one of consignment, as held by the trial judge.

It is as truly a consignment as the contracts before us in *Eilers Music House v. Fairbanks*, 80 Wash. 379, 141 Pac. 885; *Eilers Music House v. Archer*, 81 Wash. 698, 142 Pac. 453, and *Lloyd v. MacCallum-Donahoe Co.*, 127 Wash. 180, 219 Pac. 849, with which the court

should be consistent and none of which are discussed in the majority opinion.

It is a somewhat flimsy pretext upon which the decision is based.