[No. 27357. Department Two. April 20, 1939.]

H. H. STARKS, *Appellant*, v. ROBT. B. FIELD *et al.*, *Respondents.*[1]

[1] Reported in 89 P. (2d) 513.

*John A. Adams* and *C. P. Borberg,* for appellant.

*A. N. Corbin,* for respondents Field *et al.*

*Crollard & O'Connor,* for respondents Stage *et al.*

*Herman Howe, pro se.*

SIMPSON, J.—Plaintiff instituted action in the superior court for the purpose of quieting title to real property, to have a collateral agreement adjudged void, to effect the return to him of certain securities, and to obtain an accounting.

We briefly state the pertinent portions of the complaint as follows: The first portion alleges the corporate capacity of the Peshastin Fruit Growers Association and The Leavenworth State Bank, and that A. G. Stage is president of the former corporation and Robt. B. Field of the latter; that Herman Howe is an attorney practicing at Leavenworth; that plaintiff is the son and sole legatee under the will of his father, Melzar Whittlesey Starks, who died March 30, 1934; that, March 2, 1933, his father made and executed two deeds conveying to plaintiff the real property in controversy.

It is further alleged that the value of the real property and personal estate including the securities owned by the testator at the time of his death was eighty-five thousand dollars; that the deeds were not delivered to plaintiff at the time of their execution, but were placed in a safety deposit box in the Leavenworth State Bank and were delivered to plaintiff by Robert B. Field after the death of Melzar Whittlesey Starks, and were then filed for record. Plaintiff alleged that, March 2, 1934,

Melzar Whittlesey Starks gave to defendant Peshastin Fruit Growers Association a crop lien to secure advances to him of sums not to exceed twenty thousand dollars, and that thereafter the association made other advances to plaintiff, the exact amounts of which are unknown, and that the net profits of the fruit crop were reported to plaintiff to have been insufficient to discharge the obligation created by the advances.

Allegations were then made that the testator was, at the time of his death, indebted to the liquidator of the Dryden State Bank, and owed debts to other banks in the total sum of $8,836; that, November 1, 1934, defendant Peshastin Fruit Growers Association, acting through defendant Stage, represented to plaintiff that the association was unwilling to finance his crop for the following year, or years, unless plaintiff would give a power of attorney to defendant Stage authorizing him to act for plaintiff in matters pertaining to the management and control of plaintiff's business affairs, and threatened to resort to legal proceedings to liquidate the indebtedness due the association; and that thereafter, November 28, 1934, because of the representations made to him, plaintiff executed and delivered to defendant Stage an agreement and power of attorney, which instrument was drawn by defendant Howe at the direction of defendants Field and Stage, and recited that plaintiff was then indebted to defendant Leavenworth State Bank and to the other banks to whom his father had been indebted.

Another allegation was to the effect that defendant Field stated and represented to plaintiff that it was necessary, in order that plaintiff should not lose the property of his father's estate, that he endorse the notes evidencing his father's obligations to the banks, and that he signed the notes as an apparent co-maker.

The complaint stated that, January 16, 1935, defend-

ant Howe proceeded to probate his father's estate and filed a final account and petition for distribution wherein it was represented that the claims of the banks to which the testator was indebted had been settled and withdrawn; that plaintiff was inexperienced in matters of business and relied upon the business judgment and integrity of defendants; that, on February 14, 1935, and as a part of the conspiracy of the defendants to deprive plaintiff of his property by fraud and deceit, defendant Stage, without the knowledge or consent of plaintiff, executed and delivered to defendant Leavenworth State Bank a collateral agreement prepared by defendant Howe, wherein and whereby all the personal property of plaintiff from his father was purportedly pledged to the Leavenworth State Bank as collateral security to certain notes owed by plaintiff's father; that, on or about February 16, 1935, defendant Stage, acting as attorney in fact for plaintiff and also as managing officer of Peshastin Fruit Growers Association, executed and delivered to the association a mortgage in the sum of thirty thousand dollars upon all of the productive portion of plaintiff's real property and upon the crops to be grown thereon during the year 1935.

The complaint also recites that plaintiff protested to the defendants that it was not necessary to mortgage the real property, but the defendants represented to him that, unless the real property was mortgaged, the association would be unable to negotiate its crop mortgage and secure the secondary financing necessary to enable it to handle the transaction, when in fact funds were available to it upon an assignment of the crop mortgage; that the real estate mortgage was placed upon the property for the purpose of enabling defendants to deprive plaintiff of his real property as part of a conspiracy existing between them; that, June 24, 1935, defendant Stage again mortgaged the crops for the

year 1935 as an attorney in fact for plaintiff; and that, on June 26, 1935, the defendant association, by an instrument in writing, assigned the crop chattel mortgage to the Spokane Bank for Cooperatives.

The complaint further sets out that, at the end of the crop season of 1935, defendant Stage, acting as attorney in fact for plaintiff and also as the managing officer of defendant association, notified plaintiff that the operations on plaintiff's farm had been unsuccessful; that plaintiff was indebted to the association in a large amount; and that all of the defendants represented to plaintiff that a suit was about to be commenced against him to recover the indebtedness, and the only way he could avoid the suit was to convey to the association the real property which had been mortgaged and fifty-five acres of land not under irrigation, then owned by plaintiff; that no accounting was then or ever made or given to plaintiff showing the amount of his indebtedness, if any, to the association; that, as part of the transaction, defendant Stage orally promised and represented to plaintiff on behalf of defendant association that, if after a year or two of operation of the farm, they would have realized sufficient profit to liquidate the claimed indebtedness from plaintiff to the association, the property would be reconveyed to him; and that plaintiff, relying upon the defendants' promises, executed a deed to the defendant association for the sum of five thousand dollars, which was paid to him.

The collateral agreement, attached to and made a part of the complaint and signed by defendant Stage and plaintiff, pledged eighty shares of common stock and two hundred fifty shares of preferred stock of the Peshastin Fruit Growers Association, twelve shares of the capital stock of The Leavenworth State Bank, and all other intangibles of plaintiff held by that bank at the time of the execution of that agreement or thereafter

held by the bank, to secure financial accommodation given or to be given, and as collateral security for the payment of various sums due the banks.

Defendants demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer. Plaintiff gave notice of his election to stand upon his complaint, and the action was dismissed. This appeal ensued.

Appellant assigns error in the sustaining of the demurrer and in the dismissal of the action.

It is of interest to note that the collateral agreement dated February 14, 1935, attached to the complaint was signed by appellant.

It is first urged by appellant that the complaint shows that, by reason of the relationship existing between the parties and the pressure respondents were able to bring upon him, they were liable under the doctrine of business compulsion. He does not in his brief point out in what way he was compelled to sign the collateral agreement relative to the crop financing or signing the notes and deeds, but simply states "that by the acts of respondents the appellant was under duress thereby imposed upon him."

Business compulsion, sometimes referred to as economic duress or economic compulsion, while differing somewhat from the common-law duress, is a species of duress involving involuntary action, in which one is compelled to act against his will in such a manner that he suffers a serious business loss or is compelled to make a monetary payment to his detriment.

We have recognized the rule of business compulsion in the following cases: *Olympia Brewing Co. v. State,* 102 Wash. 494, 173 Pac. 430; *Duke v. Force,* 120 Wash. 599, 208 Pac. 67, 23 A. L. R. 1354; *Schafer v. Giese,* 135 Wash. 464, 238 Pac. 3; *Ramp Buildings Corp. v. North-*

*west Building Co.,* 164 Wash. 603, 4 P. (2d) 507, 79 A. L. R. 651; *Marrazzo v. Orino,* 194 Wash. 364, 78 P. (2d) 181.

"The mere threat of withholding banking accommodations is not sufficient to constitute such duress that one may avoid a contract the execution of which was induced by such threats." 17 Am. Jur. 890, § 15.

"A threat to do what one has a legal right to do cannot constitute duress. Such as to foreclose or to exercise the power of sale on a mortgage." 13 C. J. 399, § 314.

See, also, *Criterion Holding Co. v. Cerussi,* 140 Misc. 855, 250 N. Y. Supp. 735; *French v. Shoemaker,* 81 U. S. 314, 20 L. Ed. 852; and *Tisdale v. Bryant,* 38 Cal. App. 750, 177 Pac. 510.

Contracts, sales, or compromises, made under stress of pecuniary necessity, are of daily occurrence, and if such urgency is to affect their validity, no one could safely negotiate with a party who finds himself in difficulty by virtue of financial adversities.

There is no allegation in appellant's complaint that a sufficient profit was obtained from the operation of his farm while under the control of respondents Stage and Peshastin Fruit Growers Association to liquidate appellant's indebtedness, nor is there any allegation of the demand that the property be returned to him.

We are unable to find that the complaint stated any facts which would entitle appellant to recover his real property or his security because of business compulsion exercised by respondents. The complaint does not reflect that respondents were in a position to compel appellant to borrow money, to make assignments, to appoint an attorney in fact, or to sell his property. Respondents' bank and the association were in no way obligated to appellant either by contract or otherwise to furnish him funds with which to carry on his busi-

ness. Appellant was not compelled by respondents to borrow money from them; he was at liberty at any time to finance his business from other sources.

His complaint does not disclose that he suffered any damage as a result of his dealings with respondents. It is true that he alleges the payment of $4,500 in connection with any indebtedness due from him to the association was totally disproportionate to the true value of the estate. Such allegation is a mere conclusion of fact not based upon any statement which shows in any manner the total amount appellant received for his property.

Appellant alleges that the respondents entered into a fraudulent conspiracy to deprive him of his property. Alleging a conspiracy is insufficient without a statement of facts, and in addition, if the facts alleged do not, in themselves, evidence overt acts of fraud, an averment that they were done pursuant to a conspiracy to defraud adds nothing to their legal effect and affords no basis for civil liability. *North Coast Dry Kiln Co. v. Montecoma Inv. Co.*, 82 Wash. 247, 144 Pac. 58; *Eyak River Packing Co. v. Huglen*, 143 Wash. 229, 255 Pac. 123, 257 Pac. 638; *Bowman v. Wohlke*, 166 Cal. 121, 135 Pac. 37, Ann. Cas. 1915B, 1011; Harper, Law of Torts (1933), 677, § 302; 1 Cooley on Torts (4th ed.), 234-5, § 74; 2 Bancroft, Code Pleading, 1870, § 1175. We are unable to find any allegation in the complaint on which the charge of conspiracy may be founded.

Appellant contends that the facts presented by his complaint entitle him to an accounting, and cites in support of his argument, *Lindley v. McGlauflin*, 57 Wash. 581, 107 Pac. 355; *Garey v. Pasco*, 89 Wash. 382, 154 Pac. 433; and *Behneman v. Schoemer*, 141 Wash. 560, 252 Pac. 133. An examination of these cases discloses that they are not in point here.

Actions for an accounting must state the existence

of all the facts necessary to entitle plaintiff to the relief which he seeks, including an allegation that the accounting was demanded and refused.

In the case of *Seattle Nat. Bank v. School Dist. No. 40,* 20 Wash. 368, 55 Pac. 317, this court stated:

"In general, a complaint for an accounting must show by specific averments that there is a fiduciary relation existing between the parties, or that the account is so complicated that it cannot conveniently be taken in an action at law. And it must allege that the plaintiff has demanded an accounting from the defendant, and the latter's refusal to render it, in order to state a cause of action. 1 Enc. Pl. & Pr., p. 98."

The same rule is laid down in *French v. C. F. & T. Co.,* 124 Ore. 686, 265 Pac. 443; and 1 C. J. S., Accounting, 660, § 28; 1 Bancroft, Code Practice and Remedies (1927), 337, § 219.

A study of the complaint fails to disclose a necessary allegation to the effect that appellant demanded an accounting from respondents, or that one was refused.

We are of the opinion that the facts pleaded in the complaint do not allege a cause of action upon the theory of business compulsion or for an accounting.

We therefore affirm the judgment of the trial court.

BLAKE, C. J., BEALS, MILLARD, and GERAGHTY, JJ., concur.