YINGLING AIRCRAFT, INC., a corporation, Plaintiff,

v.

John BUDDE, Defendant.

Civ. A. No. 7308.

United States District Court
D. Colorado.

Sept. 6, 1962.

Erl H. Ellis, Denver, Colo., for plaintiff.

Ham & Johnson, Harlan Johnson, Lamar, Colo., for defendant.

DOYLE, District Judge.

A recovery herein is sought on three promissory notes made payable to plaintiff, which were executed October 1, 1958, by defendant. These have a total value of $10,500.00 and represent part of a group of renewal notes, some of which have not yet matured. Defendant does not deny the execution of the notes but contends that the original transaction giving rise to the signing of the present renewal notes was tainted by economic duress or business compulsion, that by reason of this fact the present instruments are not enforceable.

The plaintiff has moved for summary judgment and argues that even giving full effect to the facts as contended for by the defendant, the circumstances fail to establish duress and thus there is no effective defense apparent from the pleadings or record.

Most of the evidence is undisputed. The transaction had its inception in the purchase or leasing by defendant of an airplane from the plaintiff. Defendant's basic contention is that he signed the lease agreement under the influence of economic duress; that the contract was different from the oral agreement settled between him and plaintiff's agents.

There were negotiations leading to the execution of the contract which started February 23, 1957 and continued through March 5, 1957. Defendant maintains that there was an oral agreement whereby the lease contract could be canceled by him at any time, in which event he would merely forfeit payments made to the date of cancellation and would have no further obligation to pay rent.

Immediately prior to signing the agreement defendant had paid to plaintiff advance installments amounting to $7,196.88. Part of this was a credit, but the sum of $2,776.17 was paid by check (—the total of the installments was $59,-974.00). Notwithstanding the alleged prior inconsistent understanding, defendant signed the lease agreement on March 5, 1957. Under this intricate contract plaintiff undertook to purchase the airplane, and at the same time not to purchase it—to lease it. One might speculate parenthetically (although it is not a valid or relevant issue), as to why he would sign such a monstrosity. He must have been desirous of getting the plane. Nevertheless, during the year 1957 defendant paid a total of $21,892.20 under the lease agreement. $18,293.76 of this sum was principal and the remainder was interest. Then, on November 27, 1957, it became necessary for defendant to sell the airplane and it was thereafter sold with the joint approval of plaintiff and defendant, for $55,000.00. This sale was to Homemakers Guild, Inc., and plaintiff accepted the purchaser but at the same time required defendant to guarantee payment by the buyer. On this occasion plaintiff paid defendant $10,819.76 which was the difference between the obligation which defendant then owed plaintiff and the face amount of the paper which Homemakers Guild gave to plaintiff. As a result of this, defendant was released from any claim under the original lease agreement (which he maintains was obtained by duress).

When Homemakers Guild defaulted, defendant purchased the airplane at the foreclosure sale for $33,000.00. Defendant then became responsible for the deficiency of Homemakers Guild in the amount of $21,271.11. He, in turn, sold the airplane to still another purchaser. On April 11, 1958, defendant signed a note which was due on June 10, 1958, to plaintiff for $21,638.45 representing the deficiency, together with service and interest charges. When June 10, 1958 arrived and it was not paid, a new note was given for $21,854.83 dated June 10, 1958, which matured August 10, 1958. This latter note was not paid on the due date and there followed a series of letter negotiations between plaintiff and defendant. These involved disputes as to interest charges and the due dates of the various notes. Finally, on October 1, 1958, the present notes, three of which are in suit, were signed and delivered to plaintiff.

There is one other noteworthy fact, and that is that on June 25, 1958, the defendant, acting through his then attorneys, obtained from plaintiff an assignment of the conditional sales contract which the purchaser of the airplane, Homemakers Guild, had executed to plaintiff. Defendant then pursued Homemakers Guild in an independent action and obtained a judgment which proved valueless.

In various letters signed by defendant after October 1, 1958, he repeatedly reaffirmed his intent to pay off the obligation represented by the notes, stating that he needed time within which to do so. These letters were not, however, free of protest by defendant and in that which was written on November 12, 1958, defendant recounted the circumstances upon which he relies in this case as a defense, but even in that letter he enclosed the present notes and consented to the eight per cent. interest rate provided and assured plaintiff that the notes would be paid as they became due.

Defendant concedes that he was aware of the terms of the original contract at the time that he signed it. He states that he first saw the written lease agreement on the very day that he signed it and that he thereupon objected to its provision that it was irrevocable during the

initial twenty-four month period. He states that plaintiff, through its agents, advised him that he would either have to sign the contract as written, or forfeit his $7,196.88 down payment. He further maintains that his signature was given under the influence of the threat that he would forfeit his credit. His version of the oral contract is that plaintiff's agents assured him that he could cancel at any time and that he would merely forfeit rental payments made to the date of cancellation. Plaintiff denies that any such oral assurances were given. Its position is that the contract is a standard one used in all such lease matters.

For purposes of the motion for summary judgment the facts as represented by defendant must be (without passing on their competency) assumed to be true. Accordingly, the issues may be stated as follows:

*First,* assuming that the facts are as contended by defendant, that is, that he signed the contract under the influence of the alleged threat to forfeit his seven thousand-plus dollars, does this constitute a defense in view of the fact that there were many subsequent transactions, in all of which the defendant affirmed the original contract; that he failed to repudiate it until such time as an action was brought on the renewal notes, and

*Secondly,* assuming the truth of all of the conversations which defendant contends occurred, did this as a matter of law render the contract voidable on the ground that economic duress was responsible for inducing defendant to execute the contract?

### Point 1.

### Whether the Conduct of Defendant Amounted to Economic Duress

Considering the facts in their best light from the standpoint of the defendant, the conduct of plaintiff consisted of a threat to forfeit defendant's credit, or down-payment, unless he signed the lease agreement. Bearing in mind that by signing the agreement defendant undertook an obligation amounting to almost $60,000.00 in order to avoid a threatened forfeiture of $7,196.88, the inquiry is reduced to whether such a forfeiture threat constitutes pressure sufficient in law to create a power of avoidance. Does it, using a paraphrase of Williston, (5 Williston on Contracts, § 1620) effect so complete a coercion of the will as to justify a finding of duress?

The test often applied, is whether the person who claims the duress had at the time of its alleged exercise, an adequate legal remedy. See Vines v. General Outdoor Advertising Co., (2 Cir. 1948) 171 F.2d 487, 490. Here the Court, speaking through Judge Learned Hand, said:

> "* * * Still, it is certainly the law in New York, and probably elsewhere, that, if an obligee has adequate legal remedies, the obligor's threat to repudiate the debt, unless the obligee will enter into the contract, will not 'without more' avoid it. This is also the law in federal courts."

The law of Kansas, where the instant contract was entered into, appears to be in accord. See Burger v. First National Bank, 124 Kan. 23, 257 P. 979.

Another test mentioned in the cases is that of financial stress of the person complaining at the time. A good example of this appears in Manhattan Milling Co. v. Manhattan Gas & Elec. Co., 115 Kan. 712, 225 P. 86, 34 A.L.R. 176. Here the defendant raised power rates at a time when the plaintiff needed the power to keep his mill running. Payments made under these circumstances were held to be compulsion. But even financial stress will not prove adequate in all circumstances. Cf. Hackley v. Headley, 45 Mich. 569, 8 N.W. 511, and Starks v. Field, 198 Wash. 593, 89 P.2d 513.

Still another circumstance capable of producing duress is that of peculiar control by the defendant of special goods of the person complaining. This type is well illustrated by Moise Brothers Co., Inc. v. Jamison, 89 Colo. 278, 1 P.2d 925, wherein a railroad threatened to replevin plaintiff's cattle; and St. Louis & S. F.

R. Co. v. Gorman, 79 Kan. 643, 100 P. 647, 28 L.R.A.,N.S., 637. Here the railroad forced plaintiff to sign a contract limiting liability for injury to his cattle after he had delivered. It seems clear that free choice is substantially restricted in such circumstances.

■ It is not to be concluded that the absence of any special circumstances such as the mentioned examples will always result in a conclusion of no duress, but these examples do serve to illustrate the necessity for circumstances which substantially destroy free choice or completely coerce the will. Such facts are not present here. The instant case is much like Burger v. First National Bank, 124 Kan. 23, 257 P. 979, wherein the bank refused plaintiff depositor's withdrawal request, and required that he take notes. The Court held that this was not duress and said:

> "Appellee argues that he had to take the notes. Of course he did not have to take them; if his contract was as his petition now alleges, and his evidence tended to show, he was entitled to money for the amount of his deposit; when he demanded payment of his deposit in money, and such payment was refused, he did not have to take something else; he could have sued at once for the amount of his deposit. It was in legal substance a settlement."

So also in the instant case the defendant was not compelled to accept a $60,000.00 airplane in order to protect a $7,000.00 credit. He could and perhaps should have stuck to his original position and sought recovery of his credit. He was not required to compound and complex his condition by signing the so-called lease. Having chosen to do so he cannot now obtain an adjudication that his action was voided by economic duress.

### Point 2.

### Consequence of Affirmance of the Contract

■ Even assuming some merit in the defense of economic duress, it would nevertheless appear from the undisputed facts that defendant's repeated affirmances of the contract and his failure to rescind until he filed his answer in this court now precludes an election to declare the contract void. This follows from the doctrine that duress in the inducement does not render a contract *void*. It results in the contract's being voidable only. In order for the injured person to avoid he must elect to rescind and must communicate this intention to the other party. The Restatement of Contracts, section 484 (applicable to fraud) sets this forth as follows:

> "The power of avoidance for fraud or misrepresentation is lost if the injured party after acquiring knowledge of the fraud or misrepresentation manifests to the other party to the transaction an intention to affirm it, or exercises dominion over things restoration of which is a condition of his power of avoidance, except as stated in § 482."

Section 499 of the Restatement makes clear that this principle applies to fraud and duress in the same manner.

■ In the instant case, the defendant's retention of the airplane and his subsequent exercise of dominion over it, his participation in the sale of it together with the negotiations and renewals, all of which bespeak affirmance rather than avoidance, must be held to have the legal consequence of loss of power of avoidance.

■ See 1 Corbin on Contracts, Section 6. This points out the distinction between void and voidable contracts, and makes clear that in the case of an executed contract, the power of a party to avoid the contract must be exercised; otherwise, his conduct will result in validation. The contracting party has an option to ratify or disaffirm. See 1 Corbin, supra, 884, § 265.

It is concluded that there is no genuine issue of fact in the case, and that under the undisputed facts there is no legal defense. The motion for summary judgment is granted. It is

ORDERED that plaintiff have judgment in the amount of $10,500.00, together with accrued interest and costs. It is

FURTHER ORDERED that the counterclaim, which depends for its validity on the defense raised in the answer, be dismissed.