No. 23,966.

G. E. MINOR, *Appellee*, v. THE FIRST NATIONAL BANK OF HERING-
TON; W. H. MOTT AND J. R. KOHLER, PARTNERS AS MOTT &
KOHLER; JOSEPH W. STEIERT AND W. L. MISSIMORE, PARTNERS
AS STEIERT & MISSIMORE, *Appellants*.

### SYLLABUS BY THE COURT.

1. BANK DEPOSIT—*Joint Funds—Division of Funds—Accord and Satisfaction—
   Liability of Bank.* A fund was deposited in a bank to be divided among
   parties upon the carrying out of an agreement which they had made. On
   the day set for the distribution, one of the parties, the plaintiff, was not
   present, but the others proceeded to make a settlement and division of
   the fund. The bank issued and delivered drafts to each party, and those
   issued as the share of the plaintiff was taken by one of those present to
   deliver to plaintiff. Within a few hours plaintiff arrived at the bank, and
   learning about the division and the amount allotted to him complained of
   the settlement having been made in his absence. The president of the
   bank then offered to cancel the credits and stop payment on the drafts
   issued, but the plaintiff did not ask or desire that he do so. Instead, he
   called on the other parties, opened negotiations with them and subse-
   quently accepted and cashed the drafts issued to him. *Held,* the plaintiff
   was not entitled to a judgment against the bank for the amount he lost by
   the improper division of the fund.

2. ACCORD AND SATISFACTION—*Concurrence of Both Parties.* It takes the con-
   currence of both parties to make a payment on a disputed claim, an accord
   and satisfaction, and where the matter in dispute is left open for further
   settlement there is no accord and no extinguishment of the claim.

3. SAME—*Payment on Account.* Upon the evidence, the finding of the jury
   that a payment received by the plaintiff was upon account is held to have
   been justified.

4. SAME—*Accord and Satisfaction—Instructions.* An instruction as to the
   law of accord and satisfaction is examined and held to be without material
   error.

Appeal from Sedgwick district court, division No. 2; THORNTON W.
SARGENT, judge. Opinion filed February 10, 1923. Affirmed in part and re-
versed in part.

*R. L. Holmes, C. G. Yankey, W. E. Holmes, D. W. Eaton,* all of Wichita,
*G. W. Hurd, Arthur Hurd,* and *Bruce C. Hurd,* all of Abilene, for the appellants.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glen Porter,* all of Wichita,
for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an action to recover an amount alleged to be due G. E. Minor on an oil and gas transaction and out of a fund that had been deposited in escrow with the bank. It appears that Mott & Kohler, and Steiert & Missimore, owned oil and gas leases covering 4,080 acres while Minor, the plaintiff, was a broker dealing in such leases. The owners made an oral contract with Minor to find a purchaser for the leases, the terms of which are in dispute. Minor claimed that the owners were to have $10 per acre for the acreage, $35,000 was to be used for drilling a well on the property, $2,500 for drilling purposes, and $5,000 was to be deducted for the cost of a rig and other equipment, and that he was to have any amount over those sums for which he could sell the acreage. The owners of the leases claimed that they were to have $50,000 from the sale of the acreage, $35,000 was to be provided for the cost of the derrick and other equipment as well as the expenses in connection with drilling the well, and the plaintiff could have any amount over and above these sums that he was able to procure for the property. He procured a purchaser for the property for the price of $125,000, but by reason of a defect in the title of part of the acreage, the amount received was $115,195.20, which was placed in escrow in the bank. A part of the fund was expended in furnishing the equipment, drilling a well and other expenses, and it was agreed among them that the distribution of the balance should be made on December 22, 1919. The parties arrived at the bank on that day in Herington, except Minor, who was delayed by reason of a late train. In his absence the other parties proceeded to make a division, and drafts were issued by the bank to the several parties and Steiert & Missimore took the share of Minor for delivery to him. After the parties had left Herington, Minor arrived, called on the bank president and learned that the division had been made. He inquired of the bank officer as to the plan of the division and of the portion that had been allotted to him, and learned that his share was determined to be $24,116.80. The bank officer told Minor that he could not tell him exactly the amounts as he did not have the papers with him, but that if Minor desired he would cancel the credit issued to the other parties and stop payment on the drafts which were issued in the settlement in the division of the money. Minor did not require this, but upon learning that his drafts were in the possession

of Steiert & Missimore, of Wichita, he went there. There is a conflict in the testimony as to what transpired between that firm and Minor, but the result was that the drafts were delivered to him and he afterwards cashed them. On one side it is contended that the drafts were accepted in settlement of the controversy and on the other that they were accepted to apply on the account, the balance due to be determined by a subsequent accounting and settlement. The jury found in favor of Minor against all the parties, including the bank. The bank, as well as the other defendants, appeal.

As to the bank, the findings were that it received nothing for its services in handling the fund and that it was free from any fraud or wrong in the matter or of any attempt to cheat or wrong the plaintiff. There was a further finding that the plaintiff was informed on the evening of the day the settlement was made that the drafts had been issued by the bank to plaintiff for his share of the proceeds as computed by the defendants at the time of the settlement, and that such drafts were in the hands of defendants, Steiert & Missimore, for delivery to him, but they also found that the bank was guilty of a want of ordinary care in paying out this money as it did, although the plaintiff had accepted the checks that had been issued.

As to the other four parties there is a specific finding that the drafts were accepted to apply on account but that the plaintiff knew that the drafts had been set aside as his share of the fund and accepted them knowing of such apportionment.

The bank contends that when the plaintiff learned that a settlement had been made and a division of the proceeds were on deposit, and that the bank had issued drafts to him for his share as the same was computed, and that when he complained of the division, the bank informed him that if he so desired the bank would stop payment on drafts that had been issued and cancel the credit, he did not require this to be done, but instead went at once to Wichita and obtained the drafts and cashed them.

On the facts found, the plaintiff is not entitled to recover damages from the bank, whether or not there was accord and satisfaction as between him and the other defendants, and notwithstanding the bank was in fault in issuing the drafts upon the adjustment made by the other defendants. The plaintiff's action precludes him from holding the bank responsible for any loss sustained by an improper division of the fund. The jury acquitted the bank, as we

have seen, of any fraud or of conniving with the defendants to wrong the plaintiff in any manner. It was not paid anything nor was it promised any payment for handling the fund placed in the bank. When the plaintiff learned that a settlement and division had been made in his absence and drafts had been issued, those for his share having been turned over to Steiert & Missimore for delivery to him, and he had raised a question about the amount allotted to him, the bank president, as already shown, offered to cancel the credits issued to the defendants and to stop payment on all the drafts issued in the distribution of the fund. This step would have restored the fund and remitted the parties to the situation they occupied before the settlement and division was made. The plaintiff chose not to accept the offer and did not desire a recall of the fund, but rather, he chose to follow the defendants to Wichita, where he opened up negotiations for a settlement and division with the parties who held the drafts that had been issued. His action in rejecting the offer to obtain a return of the funds and his subsequent acceptance of the drafts that had been issued effectually waived any right he had against the bank for the premature delivery of the drafts that were issued. The bank was entitled to judgment upon the findings that were returned.

The controversy between the plaintiff and the other defendants has assumed a different aspect. The division of the proceeds of the venture had been made in the absence of the plaintiff, and there was a dispute between them as to the terms of their agreement, and of the payment of expenses incurred in carrying it out. According to the testimony and findings, as soon as the plaintiff learned of the division that had been made in his absence, he at once called on the defendants and complained of the apportionment. They said they would later fix the division and make it all right with him, stating that they would prepare a statement and furnish him all the bills of expense. Subsequently a meeting to effect a settlement was held in Kansas City but an agreement was not reached. At the previous meeting in Wichita, when plaintiff was protesting against the holding of the meeting in his absence, he accepted the drafts that had been made out as his share of the proceeds, and the question is, whether such acceptance was made as payment in full of his share or only a payment on account, leaving any balance due to be fixed in future negotiations and settlement. This question was submitted to the jury, and it found that he accepted the draft to apply on account.

The division made in plaintiff's absence, of course, was not binding
on him. However, if the amount had been tendered as full payment
of his claim, and had been accepted in satisfaction of it, it would
be an accord and satisfaction, although a much greater amount may
have been due on his claim, and although he may have protested that
more was due. (*Neely v. Thompson,* 68 Kan. 193, 75 Pac. 117.) It
is equally well settled that accord must precede satisfaction of a dis-
puted claim. Was there an accord between the parties that the
payment was made and accepted in full satisfaction of the claim?
If there was no express agreement, were the acts and declarations
of the parties in the tender and acceptance of payment such as to
imply an agreement that the payment was received in full discharge
of the demand? One who accepts a tender on that condition is
estopped to ask for further payment. However, it takes the con-
currence of both parties to make a payment an accord and satis-
faction. In *Matheney v. El Dorado,* 82 Kan. 720, 109 Pac. 166,
syl. ¶ 1, it was held:

"To constitute an accord and satisfaction, the agreement that a smaller
sum shall be accepted in discharge of a larger one originally claimed must
have been entered into by the parties understandingly and with unity of
purpose."

The same view was expressed in *Harrison v. Henderson,* 67 Kan.
194, 72 Pac. 875, as follows:

"An accord and satisfaction is the result of an agreement between the
parties, and, like all other agreements, must be consummated by a meeting
of the minds of the parties, accompanied by a sufficient consideration. If
the creditor is to be held to abate his claim against the debtor, it must be
shown that he understood that he was doing so when he received the
claimed consideration therefor." (p. 200.)

In *Brigham v. Dana,* 29 Vt. 1, it was said that:

"A sum of money paid and received will not operate as a full settlement
although the payer so intended it, and would not have paid it if he had not
understood that such would be its effect, but in reference to which he made
no such express condition, if the payee did not so understand it, and would not
have received it upon such an understanding."

While the defendants had set aside the money represented by the
drafts as the defendant's share, and that later these drafts were
delivered to and accepted by him, it does not appear that the tender
was so made that the plaintiff had no alternative but to accept them
in full payment of his share. It does not appear that payment was
made and received with that understanding. On the other hand

there is evidence that it was received on the understanding that an accounting would be had upon which the defendants would fix or make it right with the plaintiff. There could be no extinguishment of the claim if the matter was left open for further arrangement or settlement. (1 C. J. 527.) Here it was tendered and accepted as a payment on account; the balance, if any due, was to be determined by a full accounting thereafter to be made, and therefore it did not constitute an accord and satisfaction.

Complaint is made of an instruction as to accord and satisfaction. It is conceded that it contained a correct statement of the law on the subject except that it added a proviso that the plaintiff "was fully informed as to all the items which constituted the settlement." The settlement and the acceptance of the drafts had to be understandingly made in order that the payment should operate as a discharge of the claim. As was said in *Matheney v. El Dorado*, supra; "There is no accord as to a settlement unless the parties act understandingly and each has complete knowledge of the essential facts involved." (p. 723.)

We do not think the clause criticized operated to mislead the jury and was not material error.

From what has been said it is clear that there is no inconsistency between the findings and the general verdict as to the defendants other than the bank, and as to them the judgment is affirmed. The judgment as to the bank is reversed and judgment in its favor directed.