. No. 27,726.

## L. A. Hoop, *Appellee,* v. The Kansas Flour Mills Company, *Appellant.*

(262 Pac. 544.)

### SYLLABUS BY THE COURT.

Accord and Satisfaction—*Disputed Claim—Acceptance of Check Tendered as Full Payment.* Where a creditor and debtor have a dispute as to the amount of a debt, and the debtor remits checks for the amount of what he contends the debt to be, intending such remittance to be in full payment thereof, and the creditor accepts and knowingly retains the amount thus remitted, the legal consequence is that of an accord and satisfaction, notwithstanding the creditor immediately wrote to the debtor stating that he had deposited the checks, indorsed under protest, and that he expected the debtor to pay him the balance claimed by him to be still due from defendant.

Appeal from Meade district court; Karl Miller, judge. Opinion filed January 7, 1928. Reversed.

*T. A. Noftzger, George W. Cox, W. J. Masemore* and *L. R. NeSmith,* all of Wichita, for the appellant.

*H. Llewelyn Jones,* of Meade, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action to recover a balance alleged to be due on the purchase price of 770 bushels of wheat. The defense was that plaintiff had been paid in full.

On the issues joined and the evidence adduced by the litigants the trial court gave judgment for plaintiff, and defendant appeals.

Briefly the facts were these: Plaintiff was a wheat grower in Meade county. Defendant has a number of grain elevators, one of which is located at Fowler in that county. On September 1, 1921,

---

Accord and Satisfaction, 1 C. J. pp. 529 n. 75, 562 n. 85, 582 n. 33; 14 L. R. A. n. s. 443; 27 L. R. A. n. s. 439; 34 A. L. R. 1036; 1 R. C. L. 196.

plaintiff delivered 770 bushels of wheat to defendant for storage. Defendant issued two terminal warehouse receipts therefor, one of which reads, in part, thus:

"No. R 271.          TERMINAL WAREHOUSE RECEIPT.          143 bus.—lbs.

. . . . . . . . . . . . . . . . . .

WICHITA, KAN., Sept. 16, 1921.

"This is to certify that The Kansas Flour Mills Company, on the 1st day of September, 1921, received into storage at Fowler, Kansas, to be stored with grain of the same grade at the Kansas Flour Mills Company's warehouse . . . 143 bushels . . . wheat, which it will deliver to Leroy Casper [plaintiff's partner or tenant] upon surrender of this receipt and payment of all charges for storage . ' . . , etc.

"It is expressly agreed and understood that The Kansas Flour Mills Company may deliver any grade of merchantable wheat on the contract, providing,

. . .

"This receipt covers wheat stored under our local warehouse receipt No. 157, issued September 1, 1921, and if the wheat is sold to The Kansas Flour Mills Company after ninety days from that date a reduction of one and one-quarter (1¼) cents per bushel will be allowed from the storage charges on account of the savings of the loading expense."

In July, 1922, plaintiff surrendered the warehouse receipts to defendant's agent at Fowler for the purpose of selling the wheat to defendant. In payment therefor checks for $592.67 were mailed to plaintiff, together with settlement sheets showing credits based on a price of ninety-five cents per bushel and debts for dockage and storage. Plaintiff wrote to the defendant that the wheat he was selling was of the crop of 1921, not of 1922, and demanded that the defendant pay him the difference in market price, which was thirty cents per bushel. This letter brought a response from one of defendant's managers to the effect that the price paid was a fair market price at the time, and that it was all they could "at any time agree to pay."

After the receipt of this letter, plaintiff again wrote to defendant. He testified:

"In the last letter in controversy before finally accepting these checks as part payment, I told them I was depositing these checks, indorsed under protest, and expected them to pay me the difference in the value of the wheat.

. . .

"Cross-examination:

"I had quite a little wrangling with Mr. Erbacher [defendant's manager] through correspondence over the amount I received. I sent the checks back once, and they were sent back to me. They said that was all they would pay for the wheat. . . ."

Hoop v. Kansas Flour Mills Co.

"Q. Then you knew at the time you accepted these checks that they had—they had advised you prior to the time you accepted the checks that is what they considered a fair market price or they would pay?  A. I didn't take it all they paid—all they would pay; I took it as their letter stated they considered that a fair market price, which I controverted in reply immediately.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"I did not have any agreement with the defendant that I was to receive any particular amount for this wheat other than I have testified."

Defendant's demurrer to plaintiff's evidence was overruled.  Testimony was then introduced on defendant's behalf, but nothing of controlling significance was developed thereby.

It is difficult to discern on what theory judgment was entered in plaintiff's behalf.  He deposited his wheat with defendant on written terms which defined the rights of the parties.  Until he chose to sell the wheat, it was his to do with as he pleased.  He might have had it redelivered to him in kind or he might have sold it to whoever was willing to buy at a price which would satisfy him. If he could agree with defendant on a price he could sell it to the latter.  But he had to agree.  He could not fix that price himself without the concurrence of his vendee.  Nor did he have the right to keep and cash the checks without an unqualified acceptance thereof as tendered by the defendant.  That he indorsed the checks "under protest," while retaining and cashing them, detracted nothing from the legal binding force of such conduct.  All this is elementary law. In 1 C. J. 562 it is said:

"The rule applies with full force and effect, although the creditor protests at the time that the amount paid is not all that is due, or that he does not accept it in full satisfaction of his claim.  Where the tender or offer is thus made the party to whom it is made has no alternative but to refuse it or accept it upon such condition.  If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary.

"The foregoing principles relating to acceptance in satisfaction find very frequent application in the case of checks and drafts.  When a claim is disputed or unliquidated and the tender of a check or draft in settlement therof is of such character as to give the creditor notice that it must be accepted in full satisfaction of the claim or not at all, the retention and use thereof by the creditor constitutes an accord and satisfaction.  And it is immaterial that the creditor does not return a receipt in full, or that he sends receipt 'on account,' or protests that he does not accept the tender in full satisfaction of the claim.  If he is not willing to accept the check in full payment it is his duty to return it without using it."

In *Odrowski v. Swift & Co.*, 99 Kan. 163, 166, 162 Pac. 268, it was said:

"But in any event the rule has been established in this jurisdiction that where there is a disagreement as to the amount of an indebtedness, the payment by the debtor of a less amount than that claimed affords a sufficient consideration for a release of the entire demand, although he admits his absolute and immediate liability for the amount he pays. (*Neely v. Thompson,* 68 Kan. 193, 75 Pac. 117.) And this view is in accordance with the later tendency of the courts, although there is still a division of judicial opinion on the subject. (1 R. C. L. 196.)"

In *Minor v. Bank,* 112 Kan. 666, 670, 212 Pac. 672, it was said:

"However, if the amount had been tendered as full payment of his claim, and had been accepted in satisfaction of it, it would be an accord and satisfaction, although a much greater amount may have been due on his claim and although he may have protested that more was due."

In *Burger v. First Nat'l Bank,* 124 Kan. 23, 257 Pac. 979, it was held:

"When parties to a transaction differ as to how it should be settled, one of them contending it should be settled on one basis, the other contending it should be settled on another basis, and one proposes the settlement on the basis he contends for and the proposition is accepted, it is in legal substance a settlement. The fact that the party accepting does so complainingly avails him nothing. The effective way for him to protest such settlement is to decline the offer of settlement." (Syl. ¶ 2.) See, also, *Harrison v. Henderson,* 67 Kan. 194, 172 Pac. 875, and extended note thereto in 100 A. S. R. 386 *et. seq.; Neely v. Thompson,* 68 Kan. 193, 75 Pac. 117; *Baugh v. Fist,* 84 Kan. 740, 115 Pac. 551.

Against this controlling principle of law, it is contended in plaintiff's behalf that there was no contract between the parties fixing the price of plaintiff's wheat. But this contention does not meet this case. Of course there was no contract until plaintiff decided to retain and cash defendant's checks. At that point, however, the law stepped in and imposed on plaintiff the consequences of a contract—of a binding acceptance. Nor can this result be avoided on the theory that the defendant, being a warehouseman, was bound to pay the highest market price or return the same amount of grain of like quality. Defendant's obligation was governed by the terms of the terminal warehouse receipts; it was not bound to buy the grain at any price; nor was the plaintiff bound to sell to defendant at any price. Appellee also suggests that the cause was determined in the trial court on issues of fact, which should be conclusive on

appeal. But here the written instruments and the plaintiff's own evidence foreclosed all controversy as to the controlling facts, and defendant's demurrer to plaintiff's evidence should have been sustained.

Reversed, with instructions to enter judgment for defendant.