No. 36,151

J. E. ROBINSON, *Appellant*, v. H. R. HOLLENBECK and R. M. KLING-HAMER, Co-partners doing business as The Self-Service Drugs, *Appellees*.

(155 P. 2d 417)

Opinion filed January 27, 1945.

*Paul R. Kitch,* of Wichita, argued the cause, and *Howard T. Fleeson, Homer V. Gooing, Wayne Coulson* and *Manford Holly,* all of Wichita, were on the briefs for the appellant.

*Fred M. Field,* of Wichita, and *J. M. Fisher,* of Kansas City, Mo., argued the cause for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was an action for a balance claimed to be due for service under a contract of employment. The trial court sustained defendants' demurrer to plaintiff's evidence and he has appealed.

The pertinent portions of the record may be summarized as follows: In plaintiff's petition, filed July 21, 1943, it was alleged that about January 1, 1942, plaintiff and defendants, partners, entered into an oral agreement by which plaintiff agreed to work for defendants at their store in Wichita, known as "Self-Service Drugs," as a pharmacist and as assistant to defendant, R. M. Klinghamer, the active partner in charge of the business, at a weekly salary of $35 per week and in addition thereto a bonus of ten percent of the profits of the store during the year, the bonus to be paid quarterly, thirty days after the quarterly inventory; that pursuant thereto plaintiff duly performed the agreement until December 19, 1942, when he was discharged without cause; that on January 30, 1943, defendants rendered what purported to be a statement of the amount of plaintiff's bonus for the fourth quarter, based on gross sales of $117,997.40; that the statement was fraudulent and known by defendants to be fraudulent, which fact was unknown to plaintiff at

the time of the rendition thereof; that the aggregate gross sales for the last quarter were in excess of $250,000, and that there was a balance due plaintiff of $3,500, for which he prayed judgment.

Defendants' answer contained a general denial. This was followed by allegations of the employment; as alleged by plaintiff, except it was alleged that the agreement was not for a definite time, but was subject to termination at any time defendants desired to terminate it; facts were alleged which caused defendants to discharge plaintiff and terminate the agreement; that plaintiff became ill about November 13, 1942, and by reason thereof was away from the store until about December 19, during which time defendants paid him $50 per week; that plaintiff had not been in the employ of defendants, but defendants had paid him ten percent of the profits of the store to November 28, which payment was made on January 30, 1943; that plaintiff then knew the sum paid did not include any bonus for December, 1942; that the payment was made by check and endorsed on the face of the check was the following: "Final payment in full for 1942 salary and bonus"; that plaintiff endorsed and cashed the check in full satisfaction of his claim, and that he is estopped from claiming any further sum from defendants for salary or bonus, or that he was deceived or defrauded by defendants.

The reply was a general denial of the affirmative defenses pleaded.

Plaintiff's testimony was to this effect: Early in 1940 defendants, who as partners had been conducting some other line of retail merchandise, concluded to go into the drug business. They contacted plaintiff, a registered pharmacist of more than twenty years' experience in the drug business, and employed him to work for them at $35 per week, with a suggestion that the salary would likely be increased if the business justified it. The store was opened in April, 1940, under the name of "Self-Service Drugs." Plaintiff worked for them in the store for the remainder of 1940 and through 1941. Sometime in December, 1941, defendants advised plaintiff that they planned to open a similar store in Hutchinson and stated that they wanted plaintiff to stay with them through 1942 and to be an assistant to the general manager of the store and to have charge of it certain hours of the day, and proposed that they continue to pay his salary of $35 per week, but in addition to pay him further compensation of ten percent of the net profits of the Wichita store as a bonus; that he would have a

drawing account of $15 per week on this bonus, which would make his weekly payments $50 per week; that the bonus would be computed quarterly, and the payment of the balance of his bonus would be made about thirty days after the end of the quarter. Plaintiff was asked to consider the matter and a further talk was arranged. Plaintiff had a further talk with Mr. Klinghamer, one of the defendants, the first week in January, 1942, when the matter was gone over and finally agreed upon substantially as outlined at the December conference. Plaintiff assumed his new duties and continued to work in the Wichita store for defendants until December 19, 1942, at which time he was told his services were no longer needed. Throughout the year until that time they had paid him $50 per week, being the $35 salary and the $15 to be counted as a part of his bonus. About thirty days after the first quarter they had computed the earnings of the store for that quarter and had paid him the remainder of his bonus of ten percent of the profits, amounting to $940.34. At the end of the second quarter a similar computation was made, and about thirty days after the end of the quarter he had been paid the balance of his bonus of ten percent of the net profits, amounting to $1,173.95. A similar computation had been made at the end of the third quarter, which was computed as having ended on September 28, 1942, and about thirty days thereafter they paid plaintiff the balance of his bonus for that quarter, amounting to $1,292.75. Through the fourth quarter they had paid his salary and the $15 to be drawn upon his bonus up to the date of his discharge, December 19, for twelve weeks of the quarter. When plaintiff was told by Mr. Klinghamer that his services were no longer needed, which was about December 19, 1942, plaintiff asked him, what about the bonus? Mr. Klinghamer stated that would be computed and that he would pay his bonus to the end of the quarter about thirty days thereafter, and that he had no further time to discuss it then. On the evening of January 30, 1943, plaintiff went to the store and Mr. Klinghamer handed him a sealed envelope, which he stated contained his check for the balance of his bonus. At that time Mr. Klinghamer was busy in the store and plaintiff had his car double-parked for the time it would take him to go into the store, so he did not look at the check at that time. When he got home and looked over the contents of the envelope he found a check of defendants to him for $932.39, and on the check was written, "Final payment in full

for 1942 salary and bonus." In the envelope which accompanied the check was a written statement, which became plaintiff's Exhibit 1, and which reads:

"SELF-SERVICE DRUGS
Wichita, Kansas.

| Operating Report | Fourth Quarter, 1942 |
|---|---|
| SALES | $117,997.40 |
| Less: | |
| Cost of Sales | 88,191.36 |
| | |
| Gross Profit | $29,806.04 |
| Less: | |
| Operating Expense | 18,327.15 |
| | |
| NET EARNINGS | $11,478.89" |

And also a second written statement, which became plaintiff's Exhibit 3, and which reads:

"SELF-SERVICE DRUGS

Wichita, Kansas

"James E. Robinson,                    Date, January 30, 1943.
Wichita, Kansas.

| | Amount | D-10 | Net |
|---|---|---|---|
| Bonus for quarter ended 12/31/42 | $1,147.89 | O. A. B. | |
| Less—amount prepaid | 180.00 | | |
| | | | |
| | $967.89 | | |
| 1% Federal O. A. B. Deducted on salary over | | | |
| $3,000 paid in 1942 | 24.02 | | |
| | | | |
| | $991.91 | $9.92 | $981.99 |
| Federal Victory Tax, 5% | | | 49.60 |
| | | | |
| | | | 932.39" |

The next morning after receiving these documents the plaintiff called Mr. Klinghamer by telephone asking him if the amount of the check was correct and if the bonus had been computed to the first of the year, and was informed that it was correct and that the bonus had been properly computed. While plaintiff thought the bonus should have been larger he had no reason to think defendant would have computed it inaccurately. He therefore cashed the check.

Plaintiff busied himself seeking other employment, found it in Detroit, and went there soon after the middle of February, 1943.

The defendant R. M. Klinghamer, called as a witness, testified

that plaintiff's Exhibit 1 is not a correct statement of the earnings for the full fourth quarter of 1942, but only up to and including November 28, and that the office manager has the figures used in arriving at the bonus up to that date.

Cecelia Doughard testified she was employed by defendants in the capacity of bookkeeper; that she prepared the statements, Exhibits 1 and 3, sent to plaintiff with his check for his fourth quarter bonus, and that she discussed the method of computing plaintiff's bonus with both of the defendants, Mr. Klinghamer and Mr. Hollenbeck. She had with her what she called a "work sheet," which showed more in detail how she had arrived at the figures placed in Exhibit 1. This was introduced in evidence as plaintiff's Exhibit 2, and reads:

"BONUS PAID TO J. E. ROBINSON FOR FOURTH QUARTER, 1942:

Sales 9/28/42 through 11/28/42 (9 weeks)......................... $117,997.40
Less: Cost of sales 74.74%
   (Based on actual cost percentage for third quarter)............    88,191.36

Gross Profit ................................................. $29,806.04
Less: Expenses (9/14 of total expenses for fourth quarter (14
   weeks) $28,506.23 ........................................    18,327.15
   Net Earnings ...........................................    $11,478.89
Bonus—10% of $11,478.89............................ $1,147.89
Less amount prepaid.................................    180.00
   (Weekly salary was to have been $35.00—Amount
   withdrawn each week $50.00—Salary paid 12 weeks. ————
      Balance paid to Mr. Robinson..................    $967.89"

The balance shown by Exhibit 2, less certain deductions shown by Exhibit 3, was the amount of the check delivered to plaintiff. We note that the amount of the bonus which plaintiff was permitted to withdraw each week, $15, was computed for twelve weeks in both of the Exhibits 2 and 3, while the balance of his bonus was computed for only nine weeks, as shown by Exhibit 2. The witness testified that Exhibit 2 was never given to the plaintiff, and there is no contention that he knew anything about it.

The witness further testified that the gross sales were $71,346.23 for the three weeks after November 28. This would be to December 19, when plaintiff was discharged. The witness further testified that the gross sales for the fourth quarter of 1942, up to December 19, were $189,343.63. She further testified that had plaintiff been paid his bonus for the full year, up to and including the 31st day of

December, 1942, he should have been paid $6,939.83, and that he was actually paid $4,584.93.

At the close of plaintiff's evidence defendants demurred thereto upon the grounds that the evidence does not prove or tend to prove a cause of action against defendants, and "that the plaintiff's evidence clearly shows an accord and satisfaction." The court sustained the demurrer and in doing so stated that it relied upon the opinion of this court in *Hoop v. Kansas Flour Mills Co.*, 124 Kan. 769, 262 Pac. 544. The syllabus in that case reads:

"Where a creditor and debtor have a dispute as to the amount of a debt, and the debtor remits checks for the amount of what he contends the debt to be, intending such remittance to be in full payment thereof, and the creditor accepts and knowingly retains the amount thus remitted, the legal consequence is that of an accord and satisfaction, notwithstanding the creditor immediately wrote to the debtor stating that he had deposited the checks, indorsed under protest, and that he expected the debtor to pay him the balance claimed by him to be still due from defendant."

The case is not in point. There plaintiff had stored wheat with the defendant and some months later surrendered the warehouse receipts to defendant's agent for the purpose of selling the wheat to defendant. Defendant sent checks to plaintiff, with a settlement sheet showing the wheat sold at a stated price. Plaintiff was not satisfied with the price. He had "quite a little wrangling" with defendant's agent and correspondence back and forth. Plaintiff returned the checks to defendant. They were again sent plaintiff with the statement that the price was all defendant could pay. Plaintiff cashed the checks, indorsing them "under protest." No such situation existed here. Plaintiff and defendants had a contract of employment upon which they were to pay him a stated weekly salary plus a stated bonus. The only real controversy in the pleadings was whether defendants had a right to terminate the employment before the end of the year 1942. Defendants did not terminate the employment until December 19. Without consulting plaintiff, defendants computed the bonus only to November 28. It would have been substantially more if computed to the date of plaintiff's discharge, and still more if computed to the end of the year. Defendants were in position to compute this bonus accurately. Plaintiff was not. Under the evidence before the court defendants represented to plaintiff that it had been computed accurately, and plaintiff accepted the check relying upon such representations. Plaintiff had alleged that the computation had been made fraudu-

lently or wrongfully and without plaintiff's knowledge. We think the evidence amply sufficient to go to the jury.

We have no occasion here to write a treatise on the many phases of accord and satisfaction. Those interested will find an excellent late discussion in 1 C. J. S. 460 *et seq.* It is sufficient to say that under the facts disclosed by this record we think the doctrine has no application to this case.

The judgment of the court below is reversed with directions to grant a new trial.

BURCH, J., not participating.