No. 45,813

AMINO BROTHERS COMPANY, INC., *Appellant*, v. TWIN CANEY WATERSHED (JOINT) DISTRICT No. 34 of CHAUTAUQUA, MONTGOMERY, AND ELK COUNTIES, KANSAS, and QUIVIRA COUNCIL, BOY SCOUTS OF AMERICA, *Appellees*.

(476 P. 2d 228)

Opinion filed November 7, 1970.

*John A. Biersmith*, of Biersmith and Walsh, of Kansas City, Mo., argued the cause, and *Dana B. Badgerow*, of the same firm, and *John M. Wall*, of Sedan, were with him on the brief for the appellant.

*Phillip Mellor*, of Wichita, argued the cause and was on the brief for appellee Quivira Council, Boy Scouts of America.

*Gary House*, of Robbins and House, of Sedan, argued the cause and was on the brief for appellee Twin Caney Watershed.

The opinion of the court was delivered by

HARMAN, C.: This is an action upon a construction contract for recovery of money for extra work performed. Defendants prevailed upon the theory of accord and satisfaction and plaintiff has appealed.

The facts may be briefly stated.

Appellant, Amino Brothers Company, Inc., entered into a written contract with appellee watershed district whereby appellant was to construct an earthen multiple-purpose watershed dam in Chautauqua county, Kansas, on land owned by appellee Quivira Council, Boy Scouts of America, the latter agreeing to pay a portion of the cost because of unique recreational value to be derived from the project.

Appellant commenced construction of the dam, using compacting machines to compress the earth. The dam contained a large concrete draw-down structure. During the course of construction it was feared the use of heavy machinery adjacent to the "green" concrete structure might cause damage, so the parties entered into a contract modification that appellant was to use hand tamping of the earth fill adjacent to the concrete. The amount of extra compensation to be paid appellant because of the increased work of manual tamping was left for later determination after a study of the costs involved.

Appellant completed the job and was paid the amount of the initial agreed contract price which it accepted and concerning which there is no dispute. The watershed district's contracting officer first allowed the sum of $5,859.70 for the additional work, which amount appellant also received and accepted but in some manner (not revealed by the record) excepted from settlement its claim for the extra work occasioned by the contract modification. Appellant then submitted all its records to the contracting officer, claiming a gross amount of $22,342.96 for the extra work. Several months later the contracting officer decided to allow the additional sum of $2,944.72. Accordingly he wrote appellant the following letter:

"May 27, 1966.

"Amino Brothers Company, Inc.
"1018 South Mill Street
"Kansas City, Kansas 66105

"Gentlemen:

"Attached is the official decision of the Contracting Officer based on Clause 6 of the General Provisions, Contract No. TC-4C-737W. No further action is contemplated by the Watershed District, and this file shall be considered closed as soon as a check in the amount of $2,944.72 in the Decision is forwarded to your firm."

Later the contracting officer wrote a second letter:

"June 29, 1966.

"Mr. Victor Amino, President
"Amino Brothers Company, Inc.
"1018 South Mill Street
"Kansas City, Kansas, 66105

"Dear Vic:

"I am enclosing a check for an adjustment in the hand tamping operation on Site No. 18-26.

"After a careful study of the hand tamping operation that has been done by

Erickson Construction Company on Site No. 11-34, in which the dirt used in the hand tamping operation was very similar to that which was used in your hand tamping operation, I am firmly convinced that you have been paid a price per cubic yard which is adequate for this type of work."

Enclosed in the letter was the watershed district's check for $2,944.72, payable to appellant. The face of the check bore the following printed statement:

"This check is in payment of items as per statement following. Endorsement of payee will constitute a receipt in full when check is paid."

A boxed in space beneath the statement contained this hand-written item: "Increase of cost Boy Scout Dam."

Appellant endorsed and cashed the check. Approximately eleven months later it filed this suit claiming for the extra work the difference between the $8,804.42 received by it and the sum of $22,342.96. Appellees raised the defense of accord and satisfaction.

Trial commenced before a jury. In addition to the facts already related, the following appeared during the course of testimony given by appellant's president, Victor Amino, upon cross-examinations:

"Q. Now, the time came, Sir, when after you sent in your letter of December 16, it was obvious that there was still not going to be any agreement between you and the watershed district on the amount you were to be paid, isn't that right?

"A. I believe that is right.

"Q. And, under the terms of the contract, Mr. Patterson asked you to submit documents and records and figures to him, didn't he?

"A. I think that we submitted quite a few records to him before this time.

"Q. All right, but again after December 16, he gave you a further opportunity to submit records, didn't he, Sir?

"A. Probably did; I can't say for sure because I don't know off hand without checking into it.

"Q. Well, in any event, all of the records you wanted to submit to him were given him, weren't they?

"A. Right.

. . . . . . . . . . . . .

"MR. MELLOR: Mr. Amino, Defendant's Exhibit No. 25 is a letter you received—at least your company received from Mr. Patterson, is that right?

"A. Right.

"Q. Doesn't it say in that letter in respect to the controversy between you and the Watershed District about how much additional you were to be paid that the Watershed was going to pay you another $2,944.72 after which the file would be closed, does it say that?

"A. Right.

"Q. All right, Sir.

"A. It says, 'Shall be considered closed.'

"MR. MELLOR: Mr. Amino, I hand you what has been marked Defendant's Exhibit No. 12b and ask you to tell the jury what this is, if you know?

"A. That is a check that we received for this amount.

"Q. That is in the exact amount that Mr. Patterson's letter told you he would send?

"A. Right.

"Q. Following which, he would consider the file closed?

"A. He considered it closed, yes.

"Q. Now, when that check was sent to you, it was sent with another letter, was it not?

"MR. MELLOR: Your Honor, we will offer Defendant's Exhibit No. 11.

"MR. BIERSMITH: No objection.

"THE COURT: It will be received.

"MR. MELLOR: Mr. Amino, Defendant's Exhibit No. 11 is the letter that came to you with that check, isn't it?

"A. Right.

"Q. And, now, you received that check, Mr. Amino, you knew, didn't you, that Watershed District considered it final payment on this extra work?

"A. It probably did, but we didn't. I think we still retained our privilege to pursue it further.

"Q. But at the time you received it, you knew they considered the matter closed, didn't you, Sir?

"A. Right.

"Q. And, you did cash the check, didn't you, Sir?

"A. Right."

Appellees thereupon moved that the action be dismissed for the reason appellant's testimony and the exhibits evidenced an accord and satisfaction. The trial court sustained the motion and rendered judgment for appellees, hence this appeal.

Appellant asserts the trial court erred in ruling as a matter of law that an accord and satisfaction barred its claim, contending the issue should have been determined by the jury. Its argument largely is there was no express statement by appellees that an offer of settlement was made and there was never a meeting of the minds of the parties upon an accord and satisfaction.

Appellant makes the further argument the contracting officer was only carrying out contractually defined duties in forwarding the $2,944.72 check. However, the provisions of the written contract are not in the record before us. At oral argument appellant stated that because of some defect the trial court did not admit the contract into evidence; further, that the contracting officer acted

throughout as the ordinary agent of appellees, and from the facts revealed, the case is to be decided under ordinary principles of contract law.

A general definition of accord and satisfaction appears in *Lighthouse for the Blind v. Miller*, 149 Kan. 165, 86 P. 2d 508:

"An accord is a contract between creditor and debtor for the settlement of the claim by some performance other than that which is due. Satisfaction takes place when the accord is performed." (Syl. ¶ 1.)

In 1 Am. Jur. 2d, Accord and Satisfaction, § 1, p. 301, the general rule is stated thus:

"To constitute an accord and satisfaction there must be an offer in full satisfaction of the obligation, accompanied by such acts and declarations as amount to a condition that if it is accepted, it is to be in full satisfaction, and the condition must be such that the party to whom the offer is made is bound to understand that if he accepts it, he does so subject to the conditions imposed."

And in the same work, § 18, we find this:

"A creditor to whom remittance is made as payment in full of an unliquidated or disputed claim has the option either of accepting it upon the condition on which it was sent or of rejecting it, and if it clearly appears that the remittance was sent upon the condition that it be accepted in full satisfaction, then failure to reject it will result in an accord and satisfaction. Thus, acceptance and use of a check purporting to be 'in full,' or employing words of similar import, or accompanied by a letter to that effect, amounts to an accord and satisfaction of the larger claim of the creditor if that claim is unliquidated or disputed. The moment the creditor indorses and collects the check with knowledge that it is offered in full satisfaction of a disputed claim, he thereby agrees to the condition and is estopped from denying such agreement. It is then that the minds of the parties meet and the contract of accord and satisfaction becomes complete. It is not necessary to show that the creditor knows the legal effect of his acceptance of the check, and his intent in accepting the check is immaterial, since the mere acceptance will be regarded as assent.

"The fact that a remittance by check purporting to be 'in full' is accepted and used does not result in an accord and satisfaction if the claim involved is liquidated and undisputed, under the generally accepted rule that an accord and satisfaction does not result from the part payment of a liquidated and undisputed claim. The creditor is justified in treating the transaction as merely the act of an honest debtor remitting less than is due under a mistake as to the nature of the contract." (pp. 315-317.)

Thus a distinction is made between claims unliquidated or disputed and those liquidated or undisputed. Our cases recognize this distinction. In *Harrison v. Henderson*, 67 Kan. 194, 72 Pac. 875, this court stated:

"An accord and satisfaction is the result of an agreement between the parties, and, like all other agreements, must be consummated by a meeting of the minds of the parties, accompanied by a sufficient consideration. If the creditor is to be held to abate his claim against the debtor, it must be shown that he understood that he was doing so when he received the claimed consideration therefor. A simple tender of a 'balance' as shown by an account tendered by the debtor does not carry with it an implication or conclusion that by such tender the debtor paid, or that the creditor agreed to receive, the same in full of the amount due, *where there has been no prior disagreement or discussion as to what was actually due.*" (Emphasis supplied.) (p. 200.)

Where a dispute has arisen a different rule is applied. In *Hoop v. Kansas Flour Mills Co.*, 124 Kan. 769, 262 Pac. 544, this court held:

"Where a creditor and debtor have a dispute as to the amount of a debt, and the debtor remits checks for the amount of what he contends the debt to be, intending such remittance to be in full payment thereof, and the creditor accepts and knowingly retains the amount thus remitted, the legal consequence is that of an accord and satisfaction, notwithstanding the creditor immediately wrote to the debtor stating that he had deposited the checks, indorsed under protest, and that he expected the debtor to pay him the balance claimed by him to be still due from defendant." (Syl.)

Inasmuch as the case at bar was being tried to a jury, the motion to dismiss was tantamount to, and a more appropriate designation would have been, a motion for directed verdict under K. S. A. 60-250 (*a*). In considering a ruling sustaining such a motion the evidence, and all inferences that may reasonably be drawn therefrom, must be considered in the light most favorable to the party against whom the motion is directed. Even then, we are forced to the conclusion the check for $2,944.72 was given and accepted under such circumstances as to constitute an accord and satisfaction as a matter of law.

Dispute had arisen. The amount of extra pay had been discussed but remained in disagreement. The contracting officer, after reviewing all material submitted, made his decision and so advised appellant in his May 27, 1966, letter. He specifically stated he contemplated no further action and the file would be considered closed when a check for $2,944.72 was forwarded to appellant. Then in his June 29, 1966, letter enclosing the check he buttressed his decision by calling attention to work of a similar nature which he had studied and by characterizing the amount tendered as adequate pay for the particular type of work. The check bore a notation indicating its endorsement would constitute payment in full.

In his oral testimony appellant's president clearly indicated that when he received and cashed appellees' check for $2,944.72 he knew appellees "considered the matter closed". From all these circumstances he was bound to understand the check was offered only on condition it be taken in full payment of the claim.

While appellees' motion to dismiss was still under consideration by the trial court, appellant requested permission to offer further evidence consisting of certain testimony contained in a deposition of the contracting officer. Proffer was made of this testimony, to which appellees objected. Evidently the trial court considered the proffered evidence although the record is not entirely clear upon this point. At most the proffered testimony indicated only that appellant had not previously agreed to the settlement figure of $2,944.72. Giving this testimony its full weight, the result of the lawsuit would not be changed as the evidence went only to show dispute or disagreement over price prior to cashing the check. Nor would further testimony respecting Mr. Amino's particular intention at the time he cashed the check change the result. Any mental reservation he may have had respecting the closure of the matter would be immaterial on the issue of accord and satisfaction. Appellant need not have accepted and cashed the check. The effective way to protest the offer of settlement would have been to decline the check. Not having done so, appellant is estopped to deny settlement of its claim (*Burger v. First Nat'l Bank*, 124 Kan. 23, 257 Pac. 979).

The trial court's judgment was correct and it is affirmed.

APPROVED BY THE COURT.

O'CONNOR, J., not participating.